THE STATE EX REL. WHITE ET AL. *v.* FRANKLIN
COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. White v. Franklin Cty.
Bd. of Elections* (1992), 65 Ohio St.3d 45.]

(No. 92–1809—Submitted and decided October 2, 1992.)

*Donald J. McTigue,* for relators.

*Michael Miller,* Prosecuting Attorney, and *Harland H. Hale,* Assistant Prosecuting Attorney, for respondents Franklin County Board of Elections and its members.

*Lee I. Fisher,* Attorney General, and *Cherry Lynne Poteet,* Assistant Attorney General, for respondent Secretary of State.

*Chester, Hoffman, Willcox & Saxbe* and *Donald C. Brey,* for respondent Joseph W. Testa.

---

*Per Curiam.* Relators argue that the Secretary of State and board of elections abused their discretion and disregarded the law, such that writs of prohibition and mandamus should issue to overturn their decisions, which are otherwise final. *State ex rel. Higgins v. Brown* (1960), 170 Ohio St. 511, 11 O.O.2d 322, 166 N.E.2d 759, paragraph two of the syllabus; *State ex rel. Senn v. Cuyahoga Cty. Bd. of Elections* (1977), 51 Ohio St.2d 173, 175, 5 O.O.3d 381, 382, 367 N.E.2d 879, 880; *State ex rel. Shumate v. Portage Cty. Bd. of Elections* (1992), 64 Ohio St.3d 12, 14, 591 N.E.2d 1194, 1196. With

respect to prohibition, relators claim that Testa must be considered to have been a candidate for county recorder "until at least the close of voting at the primary election," that he was, at the same time, the Republican nominee for county auditor, an incompatible office, R.C. 3.11 and 319.07,[1] and, therefore, that the board improperly certified him as a candidate for county auditor on the general election ballot. With respect to mandamus, they contend that the board must issue Testa a certificate of nomination for county recorder because R.C. 3513.22 provides that "[e]lection officials, who are required to declare the results of primary elections, shall issue to each person declared nominated for * * * an office an appropriate certificate of nomination * * *."

The Secretary of State responds that, in view of *White I*, this action should be dismissed on the basis of *res judicata*. He relies on the principle of merger, which prevents a successful claimant from recovering again on the same cause of action against the same party or a party in privity, *Whitehead v. Gen. Tel. Co* (1969), 20 Ohio St.2d 108, 112–113, 49 O.O.2d 435, 437–438, 254 N.E.2d 10, 13, and the rule that a judgment is conclusive, not only as to what was raised and determined in the action, but also as to all germane matters that might have been raised and determined. *Norwood v. McDonald* (1943), 142 Ohio St. 299, 312, 27 O.O. 240, 246, 52 N.E.2d 67, 74; *State ex rel. Ohio Water Serv. Co. v. Mahoning Valley Sanitary Dist.* (1959), 169 Ohio St. 31, 8 O.O.2d 1, 157 N.E.2d 116, paragraph one of the syllabus; *Stromberg v. Bratenahl Bd. of Edn.* (1980), 64 Ohio St.2d 98, 100, 18 O.O.3d 343, 344, 413 N.E.2d 1184, 1186. He essentially argues that relators have split a single cause of action and that the entire cause must be merged into the judgment in *White I*, thereby eliminating relators' claim for further relief.

We disagree. While the Secretary of State, who was not a party in *White I*, arguably is a party in privity with the board of elections, the respondent in that case, see *Johnson's Island, Inc. v. Danbury Twp. Bd. of Twp. Trustees* (1982), 69 Ohio St.2d 241, 244–245, 23 O.O.3d 243, 245, 431 N.E.2d 672, 675, this is not the same cause of action. The most accurate test for deciding if two cases are based on the same cause of action is whether different proof is required to sustain them. *Norwood, supra*, 142 Ohio St. at 311, 27 O.O. at 245, 52 N.E.2d at 73. We acknowledge that in *White I*, there was evidence to

---

1. R.C. 3.11 and 319.07 establish that the offices of county auditor and recorder may not be held at the same time. R.C. 3.11 states:

   "No person shall hold at the same time by appointment or election more than one of the following offices: sheriff, county auditor, county treasurer, clerk of the court of common pleas, county recorder, prosecuting attorney, and probate judge."

   R.C. 319.07 provides:

   "No judge or clerk of a court, county commissioner, county recorder, county engineer, county treasurer, or sheriff shall be eligible to the office of county auditor."

establish that the board had certified Testa to appear on the general election ballot as the Republican nominee for county auditor; however, this fact was not necessary for us to hold that the election laws required the board to count votes cast for him in the primary election for nomination as recorder and to certify the election results. Moreover, there was no evidence in *White I* to establish that the board, if ordered to perform these duties, would deadlock on whether to issue Testa a certificate of nomination as the Republican candidate for county recorder, or that the Secretary of State would break the deadlock by voting against issuing the certificate.

The Secretary of State also argues, as do the other respondents, that relators' failure to bring all their causes of action at once caused delay and material prejudice. This argument has merit.

We have routinely dismissed complaints or otherwise denied extraordinary relief in election-related cases due to laches. See, *e.g., State ex rel. Lightle v. Glass* (1983), 8 Ohio St.3d 1, 8 OBR 72, 455 N.E.2d 1275 (writ of mandamus to certify resolutions for placement on ballot denied because complaint filed approximately three weeks before election); *State ex rel. Bargahiser v. Richland Cty. Bd. of Elections* (1968), 14 Ohio St.2d 129, 43 O.O.2d 238, 237 N.E.2d 133 (writ of mandamus to place candidates on ballot denied because complaint filed approximately three weeks before election); *State ex rel. Weldon v. Franklin Cty. Bd. of Elections* (1964), 176 Ohio St. 92, 26 O.O.2d 438, 197 N.E.2d 802 (dismissal of prohibition complaints to prevent putting candidates' names in voting machines and counting absentee ballots when complaints filed thirty-three days after protests decided); *State ex rel. Schwartz v. Brown* (1964), 176 Ohio St. 91, 26 O.O.2d 438, 197 N.E.2d 801 (dismissal of mandamus complaint to place candidate on ballot where complaint filed after ballot form certified); *State ex rel. Hawke v. Myers* (1936), 132 Ohio St. 18, 7 O.O. 10, 4 N.E.2d 397 (dismissal of mandamus complaint to place candidates on ballot where complaint filed after absentee ballots in use); *State ex rel. Friedlander v. Myers* (1934), 128 Ohio St. 568, 1 O.O. 167, 192 N.E. 737 (writ of mandamus denied for same reason); *State ex rel. Winterfeld v. Lucas Cty. Bd. of Elections* (1958), 167 Ohio St. 531, 5 O.O.2d 208, 150 N.E.2d 420 (dismissal of prohibition complaint to prevent placement of annexation issue on ballot where complaint filed less than three weeks before election); and *State ex rel. Peirce v. Stark Cty. Bd. of Elections* (1958), 168 Ohio St. 249, 6 O.O.2d 339, 153 N.E.2d 393 (writ of prohibition to remove nominee from ballot denied because complaint filed after period for replacing nominee for general election). See, also, *State ex rel. Hinkle v. Franklin Cty. Bd. of Elections* (1989), 47 Ohio St.3d 117, 548 N.E.2d 230 (writ of mandamus to place issues on ballot denied because complaint filed after absentee ballots mailed).

In all these cases, delay allowed some deadline to pass, usually the date for certifying the ballot form, see R.C. 3505.01 (sixty days before election), or for providing absentee ballots, see R.C. 3509.01 (thirty-five days before election). In some, relief was also impossible to grant because the case was filed just before the impending election.

Impossibility was not immediately apparent when relators filed this complaint on September 8, 1992. However, the record shows that relators anticipated their prohibition action nearly two months before the board of elections certified Testa's nomination for county auditor, and that they waited another two months after that certification to file the instant complaint. We find this delay unreasonable because "extreme diligence and the promptest of action" are required in election-related matters. *Schwartz, supra,* 176 Ohio St. at 91, 26 O.O.2d at 438, 197 N.E.2d at 802. The delay was also prejudicial because, as of September 22, 1992, the date our expedited briefing schedule was completed, the board of elections could no longer make changes to the absentee ballots and still have those ballots ready for use by September 29, 1992, as R.C. 3509.01 requires.[2] Laches, therefore, prevents us from granting the requested writ of prohibition.

By accepting laches as a defense, we reject the argument, advanced by relators, that their cause of action in prohibition arose only after our decision in *White I.* All of the events underlying relators' complaint occurred prior to *White I* except two: the certification of the primary election results and the refusal to issue Testa a certificate of nomination as the Republican candidate for county recorder. Relators' argument for the writ of prohibition, however, is not based on these two events. On the contrary, they argue that Testa is a candidate for incompatible offices, despite the absence of a certificate of nomination for one of them, because his name appeared on the primary ballot as a candidate for nomination for that office. Relators' prohibition action, therefore, actually arose on July 7, 1992, when the board certified Testa as the Republican nominee for county auditor in the general election. Nothing prevented them from filing the action and asserting their argument at that time.

---

2. Specific evidence of the prejudice caused by relators' delay is presented in the affidavit of D. Robert Keeler, who is the president of the company under contract to print the absentee ballots for use in Franklin County at the general election. Keeler attests (1) that proofs of the Franklin County absentee ballots list Testa as the Republican candidate for county auditor only, (2) that his company could not accommodate changes to the ballots after September 22, 1992 and still have them ready by the September 29 deadline, and (3) that the printing process had, therefore, already begun.

However, even if laches were not applicable in this case, we could not accept relators' argument that Testa was a candidate for incompatible offices at the same time. Underlying this argument is the theory that Testa's statement of withdrawal had no effect at all and that he can be compelled against his will to be a candidate for county recorder for the purpose of invoking a common-law rule, effective in other states, against simultaneously running for incompatible offices. *E.g., Burns v. Wiltse* (1951), 303 N.Y. 319, 102 N.E.2d 569. This theory is not supported by *State ex rel. Ashbrook v. Brown* (1988), 39 Ohio St.3d 115, 529 N.E.2d 896, and *White I.*

In *White I,* we held that the board of elections was required by statute to count the votes cast for Testa and certify the results of the election because his statement of withdrawal was ineffective to remove his name from the primary election ballot. In doing so, we merely recognized that Testa's candidacy might have some vitality apart from his personal interest in the nomination. To illustrate, we cited *Ashbrook, supra,* in which the candidacy of a deceased incumbent retained such vitality long enough for his replacement to be selected pursuant to R.C. 3513.31, so that a free, competitive general election might take place.

Although the candidate's death in *Ashbrook* did not permit removal of his name from the primary ballot, it plainly terminated his personal candidacy. Similarly, Testa's statement of withdrawal also terminated his personal candidacy. Even under the policy of protecting the elective franchise, no one can be compelled against his or her will to accept an elective office, and giving effect to Testa's candidacy beyond the fact that his name appeared on the primary ballot would ignore this basic reality. Thus, Testa's statement of withdrawal was sufficient to renounce his personal candidacy for county recorder, even though it did not relieve the board of elections from its statutory duties to count the ballots and certify the results.

We conclude, therefore, that Testa was never a candidate for incompatible offices at the same time and, thus, we do not decide whether the rule prohibiting such candidacies exists in Ohio. But, see, 1948 Ohio Atty.Gen. Ops. No. 2922. However, our holdings in *Ashbrook* and *White I* imply, relative to relators' mandamus action, that a board of elections has a duty to issue a certificate of nomination even for a withdrawing primary candidate whose name appears on a primary ballot, so that his party may choose a substitute to appear on the general election ballot. A writ of mandamus might issue for this purpose in another case, but here, the period for selecting a replacement nominee under R.C. 3513.31 (withdrawal prior to eighty days before the general election) has already passed. As mandamus does not lie to

compel a vain act, *State ex rel. Sawyer v. O'Connor* (1978), 54 Ohio St.2d 380, 383, 8 O.O.3d 393, 395, 377 N.E.2d 494, 497, we also do not grant this relief.

Accordingly, the writs of prohibition and mandamus are denied.

*Writs denied.*

MOYER, C.J., HOLMES, WRIGHT and H. BROWN, JJ., concur.

RESNICK, J., concurs in judgment only.

DOUGLAS, J., concurs separately in judgment only.

SWEENEY, J., dissents.

DOUGLAS, J., concurring in judgment only. I concur with the judgment of the majority but for a reason different from that set forth in the majority opinion. This cause should be dismissed—or at the very least the writs denied—on the basis that the decision of the Secretary of State, in breaking a tie vote of a local elections board, is final. R.C. 3501.11. In this regard, I continue to adhere to my position set forth in *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 5, 10, 598 N.E.2d 1152, 1156 ("*White I*") (Douglas, J., dissenting).