[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 490.]

THE STATE EX REL. ASCANI ET AL. *v.* STARK COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Ascani v. Stark Cty. Bd. of Elections*, 1998-Ohio-586.]

*Elections—Initiative petition to submit issue whether R.C. 3769.25(E) satellite facility for pari-mutuel wagering should be prohibited—Protest challenging initiative petition on grounds that it failed to contain R.C. 3501.38(J) election falsification statement and that R.C. 3769.25 is unconstitutional—Writs of prohibition and mandamus denied because of laches—Election cases require "extreme diligence and promptness."*

(No. 98-1914—Submitted October 13, 1998—Decided October 15, 1998.)

IN PROHIBITION and MANDAMUS.

————————————

{¶ 1} Northfield Park Associates ("Northfield Park"), an Ohio general partnership, owns and operates a standardbred horseracing track in Northfield, Ohio. Northfield Park established Canton OTB, Ltd. ("Canton OTB"), an Ohio limited liability company, to operate an R.C. 3769.25(E) satellite facility.[1] On March 16, 1998, after Canton OTB requested that intervening relator, city of Canton, approve its application to open and operate a satellite facility in the city, the Canton City Council passed an emergency ordinance approving the application subject to the further approval of the Ohio State Racing Commission. The Canton Mayor approved the ordinance on March 17.

{¶ 2} Shortly thereafter, according to published articles of The Canton Repository newspaper, respondent Stark County Elections Board Member Charles

————————————

1. R.C. 3769.25(E) defines "satellite facility" as any facility, other than a racetrack, that is approved by the Ohio State Racing Commission and at which pari-mutuel wagering is conducted under R.C. 3769.26.

E. Brown, in his capacity as Stark County Republican Party Chairman, spearheaded a drive to circulate an initiative petition to submit the issue of a satellite facility in Canton to the Stark County voters pursuant to R.C. 3769.27. The articles indicated that Brown, an attorney, drafted the petition language.

**{¶ 3}** On June 11, after conducting a public hearing, the Ohio State Racing Commission approved Northfield Park's application to open and operate, through Canton OTB, a satellite facility in Canton.

**{¶ 4}** On June 18, the petition entitled "Local Option Election Petition," signed by qualified Stark County electors, was filed with respondent Stark County Board of Elections. The petition did not contain the election falsification statement specified in R.C. 3501.38(J), including instead the following statement required by R.C. 3599.36: "WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE." The petitioners requested that the following question be submitted to the Stark County electors at the November 3 general election:

"Shall satellite facilities that receive simulcasts of live horse races and that conduct wagering on those simulcasts be prohibited throughout this county for a period of five (5) years?"

**{¶ 5}** On August 4, the board certified the foregoing issue to the November 3 Stark County general election ballot.

**{¶ 6}** On August 27, which was ten weeks after the petition was filed with the board and over three weeks after the board certified the issue set forth in the petition, relator Thomas A. Ascani, Jr., a qualified resident elector of Stark County, filed a written protest with the board challenging the validity of the petition. Ascani claimed that the petition was invalid because it did not contain the R.C. 3501.38(J) election falsification statement and that the statute permitting the election, R.C. 3769.27, is unconstitutional. Ascani requested that the board hold a hearing on his protest, declare the petition invalid, and order the issue contained in the petition

removed from the November 3 Stark County election ballot. Canton submitted a letter to the board in support of Ascani's claim challenging the constitutionality of R.C. 3769.27.

{¶ 7} On September 1 and 3, the board conducted hearings on the protest. At the hearings, Ascani's attorney conceded that she had been at the August 4 board meeting at which it decided to certify the petition issue to the November 3 ballot, but claimed that she was not representing Ascani at that time. Despite board member Brown's admitted role in drafting and reviewing the petition, the board rejected Ascani's request that Brown recuse himself from voting on the protest and Brown refused to voluntarily recuse himself. The board then voted two-to-two on a motion to uphold Ascani's protest, with Brown voting to deny the protest.

{¶ 8} As a result of the board's tie vote, the board submitted the matter to respondent Secretary of State Bob Taft. The Secretary of State denied the protest on September 14.

{¶ 9} On September 17, Ascani filed this expedited election action for a writ of prohibition or, in the alternative, a writ of mandamus to prevent respondents, the board, its members, and the Secretary of State, from conducting the November 3 election on the off-track-betting issue. We granted Canton's motion to intervene as a relator. Pursuant to S.Ct.Prac.R. X(9), the parties have submitted evidence and briefs, and Attorney General Betty D. Montgomery has filed a motion for leave to intervene as a respondent and briefs.

————————————

*Jones, Day, Reavis & Pogue*, *Harry J. Lehman*, *J. Kevin Cogan* and *Kirsten K. Davis*; *Brunner & Brunner Co., L.P.A.*, *Jennifer L. Brunner* and *Edwin L. Kirby, Jr.*, for relator Thomas A. Ascani, Jr.

*Thomas M. Bernabei*, Canton Law Director, *Kathleen O. Tatarsky* and *Robert G. Rubin*, Assistant Law Directors, for intervening relator, city of Canton.

*Robert D. Horowitz*, Stark County Prosecuting Attorney, *David M. Bridenstine*, *Scott R. Peipho* and *David A. Thorley*, Assistant Prosecuting Attorneys, for respondents Stark County Board of Elections and its members.

*Betty D. Montgomery*, Attorney General, *Arthur Marziale, Jr.* and *Jeffrey B. Hartranft*, Assistant Attorneys General, for respondent Secretary of State and intervening respondent Attorney General.

———————————

*Per Curiam.*

{¶ 10} Relators assert that they are entitled to writs of prohibition and mandamus to prevent the November 3 election on the off-track-betting issue. The Secretary of State counters that relators' claims are barred by laches. For the following reasons, we concur with the Secretary of State and deny the writs based on laches.

{¶ 11} "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 143, 145, 656 N.E.2d 1277, 1279. "Extreme diligence and promptness are required in election-related matters." *In re Contested Election of November 2, 1993* (1995), 72 Ohio St.3d 411, 413, 650 N.E.2d 859, 862.

{¶ 12} Relators did not act with the requisite diligence and promptness here. Although the local option petition was circulated before June and filed with the board on June 18, Ascani did not file his written statutory protest until ten weeks after the petition was filed and twenty-three days after the board certified the question in the petition to the November 3 election ballot. Canton did not submit its letter in support of Ascani's protest until five days after the protest. The evidence establishes that relators had at least constructive knowledge of the petition, especially given the local publicity concerning the matter and Ascani's counsel's

4

presence at the board's August 4 certification meeting. They could have discerned their objections to the petition, *i.e.*, failure to comply with R.C. 3501.38(J) and constitutional challenges to R.C. 3769.27, either before or at the time the petition was filed with the board. See *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 308-309, 686 N.E.2d 238, 243-244.

{¶ 13} Relators lack any justifiable excuse for not submitting a protest sooner. Even if relators were not responsible for any delay caused by the board's tie vote on Ascani's protest and the subsequent submission of the matter to the Secretary of State, that delay does not excuse or justify their own nearly three-month delay following the filing of the petition to submit a written protest. *State ex rel. SuperAmerica Group v. Licking Cty. Bd. of Elections* (1997), 80 Ohio St.3d 182, 187, 685 N.E.2d 507, 511.

{¶ 14} Relators' delay in filing a written protest with the board was prejudicial because by the time they filed this action for extraordinary relief, the date for certifying the ballot form had passed, and by the time the expedited briefing schedule was completed, the date for providing absentee ballots had passed. *Cooker Restaurant Corp.*, 80 Ohio St.3d at 309, 686 N.E.2d at 244; see, also, *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 45, 48-49, 600 N.E.2d 656, 659; R.C. 3505.01; R.C. 3509.01.

{¶ 15} In this regard, Ascani erroneously relies on nonelection cases to claim that no prejudice resulted from relators' failure to act promptly here. Cf., *e.g., State ex rel. Roadway Express v. Indus. Comm.* (1998), 82 Ohio St.3d 510, 513, 696 N.E.2d 1064, 1067. Nonelection cases do not normally require the "extreme diligence and promptness" required in election cases, nor do they implicate the rights of electors underlying the statutory time limits of R.C. 3505.01 and 3509.01. *In re Contested Election of November 2, 1993, Cooker Restaurant Corp.,* and *White, supra*; see, also, *State ex rel. Spencer v. E. Liverpool Planning*

*Comm.* (1997), 80 Ohio St.3d 297, 299, 685 N.E.2d 1251, 1253, where we noted this distinction by stating that "*[i]n nonelection cases*, laches is an affirmative defense which must be raised or else it is waived." (Emphasis added.)

{¶ 16} Nor does Ascani's citation of *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 291, 649 N.E.2d 1205, 1207, and *State ex rel. Rife v. Franklin Cty. Bd. of Elections* (1994), 70 Ohio St.3d 632, 640 N.E.2d 522, require that the court resolve the merits of relators' claims here. *Thurn* does not discuss laches, and this case involves more than the mere "two-week delay more than two months before an election" in *Rife*, 70 Ohio St.3d at 635, 640 N.E.2d at 525.

{¶ 17} Based on the foregoing, we deny the writs because relators' claims are barred by laches. This is not a case where the statutory time limits for certifying the ballot form and providing absentee ballots would have been exceeded even "under the best of circumstances." Cf. *State ex rel. Squire v. Taft* (1994), 69 Ohio St.3d 365, 369, 632 N.E.2d 883, 886. By resolving this case based on laches, we need not address the merits of relators' various claims or the Attorney General's motion for leave to intervene. *In re Contested Election on November 7, 1995* (1996), 76 Ohio St.3d 234, 235-236, 667 N.E.2d 362, 363.

*Writs denied.*

MOYER, C.J., RESNICK, COOK and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., concurs separately.

DOUGLAS, J., concurs in judgment only.

F.E. SWEENEY, J., dissents.

––––––––––––––

**PFEIFER, J., concurring.**

{¶ 18} This court should adopt a less rigid standard regarding the application of laches in election cases where the relator is seeking to have an issue removed from the ballot. Timeliness is a practical concern where a relator is

seeking to have something added to the ballot — the mechanics of preparing a ballot require it. On the other hand, the decision to remove an issue from the election can be made up until the time that the ballots are counted. This court has the power to impound ballots, if necessary. Thus, this court, especially in cases where the challenges made to a ballot issue are constitutional, should be less mechanical in its application of laches.

{¶ 19} I also disagree with Justice Douglas's opinion that the Secretary of State holds the final say in these matters. Where constitutionality is at issue and is properly raised, it is our job, not the Secretary of State's, to decide the issue. This is one of those cases.

{¶ 20} Here, the petitioners argue that R.C. 3769.27 is unconstitutional. While R.C. 3769.27 requires a reader to hack away at a nearly impenetrable thicket of legislative obfuscation to reach its meaning, the statute is, at its heart, constitutional. In granting municipalities the ability to allow off-track betting facilities within their borders, the General Assembly recognized that the decision of a particular municipality could have real, far-reaching effects on citizens of the entire county. The General Assembly therefore tempered the ability of one particular portion of a community to host a betting parlor when that activity is not welcomed by the community at large. In doing so, the General Assembly acted prudently and constitutionally.

_____

**DOUGLAS, J., concurring in judgment only.**

{¶ 21} I concur in the judgment of the majority denying the requested writs. I do so, however, on the basis that the decision of the Secretary of State, in breaking a tie vote of a local elections board, is final pursuant to R.C. 3501.11(X). See *State ex rel. Ruehlmann v. Luken* (1992), 65 Ohio St.3d 1, 5, 598 N.E.2d 1149, 1152 (Douglas, J., concurring); *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 5, 9, 598 N.E.2d 1152, 1155 (*"White I"*) (Douglas, J.,

dissenting); and *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 45, 51, 600 N.E.2d 656, 661 (*"White II"*) (Douglas, J., concurring in judgment only).

{¶ 22} As to Justice Pfeifer's reference to my concurrence, in this case Justice Pfeifer is, on the law, in clear error. While it is true that constitutionality of statutes is a question for the courts and not for boards of elections, commissioners, or even the Secretary of State, in the case now before us the relators could have (and should have) filed an action for declaratory judgment after the decision of the Canton City Council of March 16, 1998. Clearly relators had an adequate remedy at law, and this is not one of those cases where a party would be foreclosed from a remedy because of a lack of time to get a proper determination. It is, after all, now seven months later.

{¶ 23} Accordingly, when the matter was submitted to the Secretary of State to break a tie vote of the board of elections, the Secretary of State was called upon to make a final decision on an issue properly before him, and, therefore, R.C. 3501.11(X) is clearly in play and should be followed. Thus, any opinion as to the constitutionality of R.C. 3769.27 is purely advisory.

**FRANCIS E. SWEENEY, SR., J., dissenting.**

{¶ 24} I respectfully dissent and would grant the relief requested.

—————————