[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 107.]

THE STATE EX REL. THE RYANT COMMITTEE ET AL. *v.* LORAIN COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. The Ryant Commt. v. Lorain Cty. Bd. of Elections*, 1999-Ohio-88.]

*Prohibition—Writ sought to prohibit Lorain County Board of Elections from conducting a June 1 special election involving a zoning classification of land located in the city of Avon—Writ denied, when.*

(No. 99-941—Submitted June 22, 1999—Decided June 23, 1999.)

IN PROHIBITION.

———————————

{¶ 1} On March 2, 1999, intervening respondents Robert Barnhart and Avon Citizens Committee for Avon Commons ("Avon Citizens Committee") filed an initiative petition proposing an ordinance amending the zoning classification of an 85.8507-acre parcel of land located in the city of Avon from C-2 to C-3, which would permit greater commercial development of the land. The petition consisted of one hundred twenty part-petitions, with a total of approximately 2,433 signatures. In their petition, the petitioners requested that the proposed ordinance be submitted to the Avon electors at a June 1, 1999 special election. On the same date that Barnhart and Avon Citizens Committee filed the petition, representatives of relators, The Ryant Committee, a committee of Avon citizens, as well as certain individual Avon residents opposed to the proposed rezoning, photocopied the petition.

{¶ 2} On March 10, 1999, Avon Clerk of Council Patricia A. Vierkorn certified the sufficiency of the petition for purposes of the special election by determining that it contained two thousand thirty-nine valid signatures. The Avon Charter required that the petition contain 1,959 valid signatures, *i.e.*, thirty percent

of the 6,529 voters registered on the date of the last preceding general election, in order to be submitted to the electors at the requested June 1 special election. Sections 1 and 5, Article X, Avon Charter. Relators filed an objection with Avon City Council to the clerk's determination of sufficiency.

{¶ 3} On March 22, 1999, Avon City Council considered the proposed zoning amendment ordinance, which had been designated as Ordinance No. 61-99. After the law director noted that passage of the ordinance would subject it to a referendum, the city council rejected Ordinance No. 61-99 and instead passed Ordinance No. 62-99, which, in accordance with petitioners' written request in their petition and the initiative provisions of the Avon Charter, submitted the proposed zoning amendment specified in Ordinance No. 61-99 to the electors for a June 1, 1999 special election. On March 24, the city council transmitted certified copies of Ordinance No. 62-99 to respondent Lorain County Board of Elections for placement of the proposed rezoning ordinance on the ballot for the June 1 special election.

{¶ 4} Six days later, on March 30, relators filed a written protest against the petition with the board. Relators alleged twenty-five separate errors concerning the clerk's determination of sufficiency, including the following:

"1) the Avon Commons Rezoning Petition does not contain the required number of valid signatures for a special election to be held on June 1, 1999; it contains less than 30% of the registered voters as of November 3, 1998; it contains less than 1,959 valid signatures;

"2) printed names were counted as valid signatures (ORC Section 3501.38(B));

" * * *

"5) signatures of non-registered electors or voters were counted (ORC Section 3501.38(A); 731.37; 3599.13);

2

"6) signatures with incorrect voting residence addresses were counted as valid registered electors or voters (ORC Section 3501.38(A) and (C); 3503.06);

" * * *

"10) duplicate signatures were counted (ORC Section 3501.38(D); 3519.06(E); 731.37; 3599.13);

"11) signatures were counted which were signed by someone other than the purported signature (ORC Section 3501.38(D); 731.37; 3599.13);

" * * *

"13) the circulator[s'] statements contai[n] erroneous signatur[e] total[s] (ORC Section 3501.38(E));

" * * *

"20) signatures were counted for electors who were registered after November 3, 1998 (Avon City Charter Article 10, Section 1);

"21) the necessary conditions precedent for the submission of the petition to electors ha[ve] not been satisfied (Avon City Charter Article 10, Section 1);

"22) non-genuine signatures which do not match the voting registration records were counted (ORC Section 3501.38(A) and (C); 3503.06);

"23) alterations and corrections were made to the part-petitions (ORC Section 3501.38(I); 3519.06(C); 731.36(E))."

{¶ 5} The vast majority of relators' categories of error did not specify how many signatures were affected by each error, and relators additionally did not specify which signatures on which part-petitions they were challenging. Relators also requested subpoenas for "individuals having testimony and evidence, and records and documents," but did not inform the board of any specific individuals or records that they wanted subpoenaed.

{¶ 6} On April 13, the counsel for the board conducted a preliminary hearing in order to narrow the issues raised by the protest. At the hearing, the board's director noted that the board had determined that the petition contained two

3

thousand seventy-five valid signatures, *i.e.*, more than the 1,959 valid signatures required for the June 1 special election. She further stated that the board treated newly registered voters as valid petition signers if, in accordance with the criteria established by the Secretary of State, their registration cards were filed with the board on or before the time the petition was filed.

**{¶ 7}** At the preliminary hearing, intervening respondent First Interstate Development Company[1] ("First Interstate") objected to relators' failure to specify their objections to the initiative petition in their protest and noted the following:

"The problem is we have no idea which signatures on which petitions that [relators] find to be defective, and in order for us to prepare for the hearing to interview witnesses, to subpoena the appropriate witnesses, unless we know what specific part-petitions and signatures contained therein that [relators] are protesting, we have no basis to prepare. And actually the Board has no basis to proceed on a protest hearing."

**{¶ 8}** Relators responded that they would not provide this information until the board so ordered because they deemed the information to be their attorney work product. At the same time that relators refused to divulge which specific signatures they claimed were invalid, they requested that a protest hearing be scheduled for April 27, rather than the May 10 date suggested by the board's counsel.

**{¶ 9}** On April 15, the board, pursuant to its authority under R.C. 3501.11(J) to compel the production of evidence and in order to identify relators' specific claims before conducting a protest hearing, requested that relators provide certain evidence by April 23. Among other items, the board requested that relators identify which signatures were being challenged and the reasons for each challenge, and further requested the names and addresses of the persons who would testify and

---

1. First Interstate Development Company is a real estate company that owns the rights to develop and an option to purchase the property that is the subject of the proposed rezoning.

those whom relators wanted subpoenaed for the protest hearing. On April 23, relators provided a response to the board's request for more specific objections. On May 3, the board's counsel sent a facsimile copy of a preliminary protest investigation report in which the board's director tentatively concluded that most of relators' specified challenges were meritless. On May 7, after the board's previously imposed deadline had expired, relators notified the board that a handwriting expert would testify at the May 10 protest hearing.

{¶ 10} On May 10, the board conducted an initial protest hearing before two of its four members. One of the board members had recused himself due to a conflict of interest and another member was not present. The board proceeded with the hearing, and relators refused to have their expert testify because of the presence of only two board members. The board's counsel and director detailed the investigation of relators' protest and concluded that even after excluding a few additional signatures based on relators' protest, the petition had sufficient valid signatures to warrant submission of the rezoning issue to the electors at the June 1 special election. Two circulators testified that although they circulated part-petitions in which a person signed for the person's spouse, they did not knowingly allow these persons to sign for their spouses. On the same date as the hearing, relators filed yet another protest, which specified additional signatures that they challenged.

{¶ 11} On May 20, the board held a final protest hearing, with a third member who had reviewed the May 10 transcript joining the two board members who had been present at the May 10 hearing. At the hearing, relators' handwriting expert testified that based on clear and convincing evidence, ten signatures on the petition were not written by the named individuals. Four of these signatures had been previously invalidated by the board. At the conclusion of the hearing, the board denied the protest and certified the rezoning issue for the June 1 special election ballot.

**{¶ 12}** On May 13, *i.e.*, seven days before the board's final protest hearing, relators filed a complaint in this court for a writ of prohibition to prevent respondents board and its members from conducting the June 1 special election. Due to the proximity of the election (*i.e.*, our expedited schedule for the submission of evidence and briefs under S.Ct.Prac.R. X[9] would not be completed until after the June 1 special election) as well as relators' allegations that the board had delayed ruling on their protest, we issued an entry impounding the ballots and ordering that the result be sealed and filed with the court. 85 Ohio St.3d 1491, 710 N.E.2d 276. Relators subsequently amended their complaint as a matter of course pursuant to Civ.R. 15(A) in order to allege that the board's May 20 rejection of their protest and certification of the rezoning issue constituted an abuse of discretion and a clear disregard of applicable election law. We permitted First Interstate, Avon Citizens Committee, and Barnhart to intervene as respondents. 85 Ohio St.3d 1494, 710 N.E.2d 714. Respondents filed motions to dismiss in addition to evidence and merit briefs. First Interstate also filed a motion *in limine* to exclude some of relators' evidence and a motion for sanctions.

**{¶ 13}** This matter is now before the court upon the evidence and briefs of the parties and the pending motions. The June 1, 1999 special election was conducted and the sealed result was transmitted to the court on June 3.

---

*Grendell & Associates, L.L.P.*, and *Timothy J. Grendell*, for relators.

*Phillips & Co., L.P.A.*, and *Gerald W. Phillips*, *pro se*.

*Gregory A. White*, Lorain County Prosecuting Attorney, and *Gerald A. Innes*, Assistant Prosecuting Attorney, for respondents Lorain County Board of Elections and its members.

*Brunner & Brunner Co., L.P.A., Jennifer L. Brunner, Edwin L. Kirby, Jr.,* and *David R. Funk*; *Kahn, Kleinman, Yanowitz & Arnson Co., L.P.A.*, and *Sheldon*

*Berns*; *Chester, Willcox & Saxbe, L.L.P.*, and *J. Craig Wright*, for intervening respondent First Interstate Development Company.

*Walter & Haverfield, P.L.L.*, *Barbara R. Marburger* and *R. Todd Hunt*, for intervening respondents Avon Citizens Committee for Avon Commons and Robert Barnhart.

_____

***Per Curiam.***

Motions to Dismiss

**{¶ 14}** Respondents filed motions to dismiss this cause. Respondents' motions are meritless. Respondents the board, its members, and First Interstate improperly attached to their motions and relied on evidence that is not contained in relators' complaint or amended complaint. *State ex rel. Fuqua v. Alexander* (1997), 79 Ohio St.3d 206, 207, 680 N.E.2d 985, 986-987. In addition, these motions are generally inappropriate in expedited election cases filed in this court. See *State ex rel. Yiamouyiannis v. Taft* (1992), 65 Ohio St.3d 205, 206-207, 602 N.E.2d 644, 645, construing former S.Ct.Prac.R. VIII(11). Under S.Ct.Prac.R. X(9), the presentation of evidence and briefs on the merits in expedited election cases is provided in lieu of a S.Ct.Prac.R. X(5) dismissal determination, making procedural motions normally inapplicable. See *State ex rel. SuperAmerica Group v. Licking Cty. Bd. of Elections* (1997), 80 Ohio St.3d 182, 184-185, 685 N.E.2d 507, 509, quoting Staff Commentary to S.Ct.Prac.R. X(9). Finally, after construing the allegations of relators' amended complaint and all reasonable inferences therefrom in their favor, we find that it is not beyond doubt that relators cannot prove a set of facts entitling them to the requested writ. *State ex rel. Kaylor v. Bruening* (1997), 80 Ohio St.3d 142, 684 N.E.2d 1228; *State ex rel. Lee v. Trumbull Cty. Probate*

*Court* (1998), 83 Ohio St.3d 369, 372, 700 N.E.2d 4, 7.[2]   Therefore, we deny respondents' motions to dismiss.

Prohibition; Specificity of Objections and Laches

{¶ 15} Relators request a writ of prohibition to, among other things, prevent the board and its members from announcing and certifying the June 1, 1999 election results.  We, however, need not address relators' claims because of their failure to specify objections in their March 30, 1999 protest in accordance with R.C. 3501.39 and their concomitant failure to act with the diligence and promptness required in election matters.

{¶ 16} The board has authority under R.C. 3501.11(K) and 3501.39 to determine the sufficiency and validity of municipal initiative and referendum petitions.  *State ex rel. Manos v. Delaware Cty. Bd. of Elections* (1998), 83 Ohio St.3d 562, 564, 701 N.E.2d 371, 372.  Like the municipal charter in *State ex rel. Kennedy v. Cuyahoga Cty. Bd. of Elections* (1976), 46 Ohio St.2d 37, 39, 75 O.O.2d 100, 102, 346 N.E.2d 283, 285, the Avon Charter makes no reference to the board of elections, nor does it purport to negate the board's duties and powers under R.C. 3501.11(K) and 3501.39.  If the framers of the Avon Charter had intended to completely divest boards of elections, which are the local authorities best equipped to gauge compliance with election laws, of their authority to determine the sufficiency and validity of municipal initiative and referendum petitions, they would have done so with unambiguous language.  Cf. *State ex rel. Sinay v. Sodders* (1997), 80 Ohio St.3d 224, 231, 685 N.E.2d 754, 760.  In the absence of express language in a charter demonstrating a conflict with a statute, it is the duty of courts to harmonize the provisions of the charter and statutes relating to the same matter. *State ex rel. Regetz v. Cleveland Civ. Serv. Comm.* (1995), 72 Ohio St.3d 167, 170-

---

2. Because respondents board, its members, and First Interstate also filed answers, their untimely motions to dismiss are actually Civ.R. 12(C) motions for judgment on the pleadings. *Lee*, 83 Ohio St.3d at 371, 700 N.E.2d at 7.

171, 648 N.E.2d 495, 498. Here, council acted pursuant to its charter authority and that authority does not negate the board of elections' statutory protest authority.

{¶ 17} R.C. 3501.39(A)(2) provides that a board of elections shall accept any petition unless a "written protest against the petition  * * *, *naming specific objections*, is filed, a hearing is held, and a determination is made by the election officials with whom the protest is filed that the petition violates any requirement established by law."  (Emphasis added.)

{¶ 18} Relators' March 30 protest filed with the board contained twenty-five separate challenges, most of which attacked the validity of petition signatures, but failed to specify the signatures involved in each challenge.  Relators had already copied the petition on March 2 and had filed a March 22 objection with city council concerning the clerk of council's March 10 determination of sufficiency.  The twenty-eight days between March 2 and March 30 provided ample time for relators to review the part-petitions and board records to formulate specific objections to specific signatures.  Instead, relators chose to include a laundry list of general, alleged defects.  In the absence of specific objections, the board, the petitioners, and First Interstate were left with one hundred twenty part-petitions containing over two thousand four hundred signatures and no notice of which specific signatures were being challenged and for what reasons.

{¶ 19} Relators' general objections did not give the board, Avon Citizens Committee, and First Interstate sufficient notice of their claims.  As we observed in *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 308, 686 N.E.2d 238, 243, "One of the evident purposes of [the specificity] requirement is to give notice to the petitioner and the opportunity to present evidence to rebut the objections specified."  That purpose was not achieved here.  First Interstate expressly noted at the April 13 preliminary hearing its inability to properly defend against relators' objections without knowing the specific part-petitions and signatures being challenged by relators.  Contrary to relators' claims,

the R.C. 3501.39(A)(2) specificity provision did not require them to divulge their work product or their evidence; it required them only to specify which signatures out of over two thousand four hundred they were challenging and for what reasons. Relators did not so specify in their March 30 protest.

{¶ 20} Therefore, relators did not comply with the R.C. 3501.39(A)(2) specificity requirement when they filed their March 30 protest, and they ultimately specified their objections twenty-four days later only when they were ordered to do so by the board.

{¶ 21} Due to relators' initial failure to comply with R.C. 3501.39(A)(2) and other conduct, relators' claims are barred by laches. Extreme diligence and promptness are required in election matters. *State ex rel. Bona v. Orange* (1999), 85 Ohio St.3d 18, 20, 706 N.E.2d 771, 773. By failing to initially file specific objections on March 30, relators necessitated the board's preliminary hearing on April 13 as well as the board's April 15 request for specific objections, to which relators provided a response on April 23. Relators later refused to have their expert testify at the May 10 protest hearing and submitted supplemental evidence challenging additional signatures on May 10, which was sixty-nine days after relators photocopied the petition and forty-seven days after the city council transmitted copies of Ordinance No. 62-99 to the board.

{¶ 22} By not promptly submitting a statutorily sufficient protest and by engaging in acts of gamesmanship that did not assist the board in its objective of expeditiously determining their challenges, relators commenced a sequence of dilatory actions that necessitated our order to impound the ballots for the special election. If relators had acted with the requisite diligence, they would have been able to file an expedited election case that could have been submitted to the court pursuant to the expedited election schedule of S.Ct.Prac.R. X(9) well before the June 1 special election. Instead, relators' unjustified delaying tactics led to our impoundment order and resulted in prejudice to the electors of Avon. In fact,

relators' actions have now circumvented application of our general rule that " 'election cases are moot where the relief sought is to have a name or an issue placed on the ballot and the election was held before the case could be decided.' " *Bona*, 85 Ohio St.3d at 21, 706 N.E.2d at 773-774, quoting *In re Protest Filed by Citizens for the Merit Selection of Judges, Inc.* (1990), 49 Ohio St.3d 102, 103, 551 N.E.2d 150, 151. Relators' lack of diligence helped cause the late filing of this case, which rendered it impossible to have the parties' evidence and briefs submitted under S.Ct.Prac.R. X(9) before the June 1 special election.

{¶ 23} Relators contend that any delay was caused by the board's failure to conduct a timely protest hearing. This contention is meritless. Any additional delay by the board in failing to hold a protest hearing does not excuse relators' delay in the submission of a proper protest and the election process. *State ex rel. Manos v. Delaware Cty. Bd. of Elections*, 83 Ohio St.3d at 563, 701 N.E.2d at 372; *State ex rel. Ascani v. Stark Cty. Bd. of Elections* (1998), 83 Ohio St.3d 490, 493, 700 N.E.2d 1234, 1237. In fact, much of the board's delay was directly attributable to relators' actions.

{¶ 24} Based on the foregoing, we deny the writ because of laches. Relators did not act with the requisite diligence in pursuing their protest to the initiative petition. Because relators' action is meritless, we also rescind our previous impoundment order and order the board to publicly declare the June 1 special election results.[3]

*Writ denied.*

MOYER, C.J., F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and RESNICK, JJ., concur in judgment only.

PFEIFER, J., concurs separately.

---

3. Based on our holding, we need not address the remaining issues raised by the parties, and First Interstate's motion *in limine* is moot. We also deny First Interstate's motion for sanctions.

_____

**DOUGLAS, J., concurring in judgment only.**

{¶ 25} While I concur with the majority's action in dismissing this case, I do so for an entirely different reason, and that necessitates this writing.

{¶ 26} By entertaining this action, which we do by dismissing the case on the basis of laches, I believe that the majority has failed to grasp what really happened in this case and, in the process, has completely missed the issue of the authority of the Avon City Council to do what it did and, conversely, this court's lack of authority to, in this action for a writ of prohibition, review the council's action. Instead, the majority focuses on the citizen petition process, the Lorain County Board of Elections' action or lack of action, no protest hearing, alleged invalid petition signatures, and laches. In my judgment, none of these issues is dispositive because we need not and should not ever reach them.

{¶ 27} What really happened in this case is that the city council properly *rejected* the Avon Citizens Committee's initiative petition (proposed Ordinance No. 61-99) as the council should have done, and the council did so pursuant to authority derived from the Avon City Charter. Section 1, Article X of the Charter reads, in part, "[w]hen so submitted [an initiative petition] * * * the Council shall take final action, either enacting, amending, *or rejecting* the proposed ordinance * * *." (Emphasis added.) The council followed the charter and, in my view, for good reason rejected the ordinance proposed by the petitioners. In part, the petitioners' proposed ordinance (No. 61-99) stated that "the zoning classification of the Property consisting of 85.8507 acres * * * is hereby changed from C-2 to C-3 and that the Zoning Map of the City of Avon be hereby amended to reflect this change." Thus, with this language in the ordinance, if city council had passed the ordinance the change would have, if council had the authority to pass such an ordinance on this particular piece of property, taken effect in thirty days subject to referendum pursuant to Section 2, Article X of the Charter, and this is so

notwithstanding that the petition provided that the matter was to be submitted to the electors for their determination. At that point, had the foregoing occurred, the vote really would no longer be on an ordinance initiated by petition but would, in effect, be a referendum on the action of city council.

{¶ 28} To avoid all of this, the city law director obviously thought through the entire process and gave solid legal advice to his clients, the mayor and council members, who wisely followed that advice. Council, after rejecting the ordinance proposed by the petitioners, then passed its own ordinance (No. 62-99), which properly submitted to the electors of the city of Avon the ultimate question of whether the zoning change should be granted. This the council had every right and power to do and can do, as long as the proper procedures are followed, without interference by this or any court. In fact, a city's power of local self-government includes the right to call an election even to determine matters that are purely advisory in nature. *State ex rel. Bedford v. Cuyahoga Cty. Bd. of Elections* (1991), 62 Ohio St.3d 17, 19, 577 N.E.2d 645, 647. Thus, the *Bedford* court said that "[t]he city contends * * * that * * * (1) municipal elections on matters of local concern are within the powers of local self-government conferred by Section 3, Article XVIII of the Ohio Constitution, and (2) these powers are self-executing. We agree."

{¶ 29} Accordingly, the city council had the authority to proceed as it did. Neither we nor any other person or entity has the authority to question, in prohibition or otherwise, such action of the council. This original action should be dismissed as not stating a cause of action and, because the action seeks relief which we are not authorized to grant. Because the ultimate result is the same, dismissal, I concur but only in the judgment of the majority.

RESNICK, J., concurs in the foregoing opinion.

———————————

**PFEIFER, J., concurring.**

**{¶ 30}** I would reach the merits and deny the writ.

_____