MASON CITY SCHOOL DISTRICT ET AL. *v.* WARREN
COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *Mason City School Dist. v. Warren Cty. Bd.
of Elections,* 107 Ohio St.3d 373, 2005-Ohio-5363.]

(No. 2005–1704—Submitted September 29, 2005—Decided October 10, 2005.)

**Per Curiam.**

{¶ 1} This is an expedited election case in which relators seek a writ of prohibition to prevent a board of elections from placing a levy-decrease question on the November 8, 2005 election ballot.

{¶ 2} On May 3, 2005, voters in relator Mason City School District approved a continuing operating levy of 6.94 mills, which increases to 9.94 mills over a three-year period.

{¶ 3} On May 24, Citizens for Accountability and Results in Education ("CARE") submitted a petition to respondent Warren County Board of Elections. In the petition, filed pursuant to R.C. 5705.261, CARE sought to submit a proposed decrease of the voter-approved levy to 2 mills to the school-district electorate at the November 8 election. The petition contained 1,344 signatures.

{¶ 4} On May 27, 2005, Mason City School District requested that the board of elections give it notice of any board meeting at which the CARE petition would be considered.

{¶ 5} On August 15, after receiving notice of an August 16 board meeting to determine whether to certify the levy-decrease question presented in the CARE petition to the November 8, 2005 election ballot, relators, the school district and certain district electors, delivered a letter to the board of elections. In their letter, relators urged the board of elections not to certify the petition and advised the board that they were prepared to present evidence at the August 16 meeting that certain signatures should be invalidated. Relators noted that "[a]mong the deficient signatures are numerous examples of one individual signing for themselves and someone else," but they did not specify which signatures were deficient in their August 15 letter.

{¶ 6} On August 16, the board of elections certified the levy-decrease question presented by CARE's petition to the November 8, 2005 election ballot. Nine hundred thirty-eight valid signatures were required for placement of the issue on the ballot, and the board determined that the petition contained 1,098 valid signatures.

{¶ 7} On August 22, relators submitted a written protest to the board of elections in which they challenged the board's certification and the sufficiency of the petition. Relators claimed that the petition contained fewer than the required 938 valid signatures. More specifically, relators claimed that (1) on several part-petitions, it appeared that the same person signed twice, (2) numerous part-petitions contained circulator statements that were invalid because of alterations, (3) a circulator knowingly permitted an unqualified person to sign the petition, (4) one petition contained an incorrect number in the circulator statement, (5) one circulator used misleading tactics to gather signatures, (6) one signer was not qualified because he is not a district resident, and (7) several signers placed incorrect dates on the petition.

{¶ 8} On August 31, the board held a hearing on relators' protest. At the conclusion of the hearing, the board denied the protest and upheld its previous certification of the levy-decrease question to the November 8, 2005 election ballot.

{¶ 9} Twelve days later, on September 12, 2005, relators filed this expedited election case for a writ of prohibition to prevent the board of elections from placing the levy-decrease question on the November 8, 2005 election ballot. We granted CARE's and John Meyer's [1] motion to intervene as additional respondents, and the parties filed evidence and briefs pursuant to the accelerated schedule in S.Ct.Prac.R. X(9). The final brief was filed on September 29.

{¶ 10} This cause is now before us for our consideration of the merits.

{¶ 11} Relators request a writ of prohibition to prevent the board of elections from submitting the levy-decrease issue to the school-district voters at the November 8, 2005 election. Respondents counter that relators' action is barred by laches.

{¶ 12} "We have consistently required relators in election cases to act with the utmost diligence." *Blankenship v. Blackwell*, 103 Ohio St.3d 567, 2004-Ohio-5596, 817 N.E.2d 382, ¶ 19. "If relators do not act with the required promptness, laches may bar the action for extraordinary relief in an election-related matter." *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 12. " 'The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual

---

1. In their answer, CARE and Meyer assert that Meyer is one of the petitioners.

or constructive, of the injury or wrong, and (4) prejudice to the other party.' " *State ex rel. Ascani v. Stark Cty. Bd. of Elections* (1998), 83 Ohio St.3d 490, 493, 700 N.E.2d 1234, quoting *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 143, 145, 656 N.E.2d 1277.

{¶ 13} Relators failed to act with the requisite diligence in asserting their claims. They knew or should have known about CARE's filing of the levy-decrease petition on May 24. Relators' own evidence includes the May 27 letter of the school district, which establishes that it had actual knowledge of the petition at that early date. Most of relators' objections to the petition, including the alleged alterations of petition circulator statements, the incorrect number of signatures in one circulator statement, and the erroneous petition signature dates, could have been discerned by a routine inspection of the petition when it was filed with the board of elections on May 24.

{¶ 14} Relators did not, however, promptly file a protest challenging the petition. Instead, they waited 90 days from the date CARE filed the levy-decrease petition with the board of elections to submit, on August 22, their detailed written protest of the board's August 16 certification of the petition. Relators then waited an additional 12 days from the August 31 board decision denying their protest to file this expedited election action for a writ of prohibition. " '[W]e have held that a delay as brief as *nine days* can preclude our consideration of the merits of an expedited election case.' " (Emphasis sic.) *State ex rel. Demaline v. Cuyahoga Cty. Bd. of Elections* (2000), 90 Ohio St.3d 523, 526–527, 740 N.E.2d 242, quoting *State ex rel. Landis v. Morrow Cty. Bd. of Elections* (2000), 88 Ohio St.3d 187, 189, 724 N.E.2d 775. Relators' aggregate *102–day* delay is considerably lengthier than nine days.

{¶ 15} Relators lack any justifiable excuse for this delay. Notwithstanding relators' argument to the contrary, they did not need to await the board of elections' certification of the petition before they protested the petition. R.C. 3501.39 authorized relators to file their protest with the board of elections, and nothing in that statute prohibited them from submitting their protest before the board certified the petition. See R.C. 3501.39(A) ("The * * * board of elections shall accept any petition described in section 3501.38 of the Revised Code unless one of the following occurs: * * * (2) A written protest against the petition * * *, naming specific objections, is filed, a hearing is held, and a determination is made by the election officials with whom the protest is filed that the petition violates any requirement established by law"); see, also, *Ascani*, 83 Ohio St.3d at 493, 700 N.E.2d 1234 (prohibition and mandamus to prevent an election on off-track-betting issue were barred by laches because, among other reasons, relator did not file a written statutory protest until ten weeks after the petition was filed, even though he could have determined his objections either before or at the time

the petition was filed with the board, which was before the board certified the issue in the petition); *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 308, 686 N.E.2d 238 (laches barred prohibition action to prevent a local-liquor-option election because "[a]lthough the liquor option petitions were circulated and filed with the board in early June, [the protesters] waited until after the board certified the sufficiency and validity of the petitions in August * * * to file their protests").

{¶ 16} Factually as well as legally, relators' argument that they could not have protested anything before the elections board's certification lacks merit. As noted previously, their arguments in their protest and in their claim in this court focus on the validity of the levy-decrease petition, which was filed on May 24.

{¶ 17} Moreover, relators' August 15 letter to the board of elections noting their intent to protest any certification of the petition and containing general objections to the petition signatures did not constitute a valid protest under R.C. 3501.39(A)(2), because relators failed to specify the signatures being challenged. "One of the evident purposes of [the specificity] requirement is to give notice to the petitioner and the opportunity to present evidence to rebut the objections specified." *Cooker*, 80 Ohio St.3d at 308, 686 N.E.2d 238. Relators' August 15 letter did not serve that purpose. Therefore, relators' detailed, statutorily sufficient protest was not filed until August 22. Because relators' August 15 letter was not a valid protest, the board of elections did not abuse its discretion in refusing relators' request to present evidence at the board's August 16 meeting.

{¶ 18} Furthermore, any minimal delay caused by the board's scheduling of a hearing on relators' August 22 protest for August 31 does not excuse relators' delay in the submission of a valid protest. See *State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections* (1999), 86 Ohio St.3d 107, 114, 712 N.E.2d 696 ("Any additional delay by the board in failing to hold a protest hearing does not excuse relators' delay in the submission of a proper protest and the election process"); *Ascani*, 83 Ohio St.3d at 493, 700 N.E.2d 1234.

{¶ 19} Finally, this protracted delay of 102 days prejudiced respondents by making this case an expedited election case under S.Ct.Prac.R. X(9), thereby restricting respondents' time to prepare and defend against relators' claims, which include the novel assertion that R.C. 5705.261 is unconstitutional. See, e.g., *State ex rel. SuperAmerica Group v. Licking Cty. Bd. of Elections* (1997), 80 Ohio St.3d 182, 186, 685 N.E.2d 507; *Blankenship*, 103 Ohio St.3d 567, 2004-Ohio-5596, 817 N.E.2d 382, ¶ 27. Relators' dilatory actions also allowed the date to certify the ballot to pass. See R.C. 3505.01 (60 days before election); see, also, *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 45, 49, 600 N.E.2d 656. And by now the date by which absentee ballots must be ready for use has passed. R.C. 3509.01.

{¶ 20} This case is comparable to other expedited election cases in which we have held that laches barred claims for a writ of prohibition to prevent an election from occurring. See, e.g., *State ex rel. Manos v. Delaware Cty. Bd. of Elections* (1998), 83 Ohio St.3d 562, 701 N.E.2d 371 (relators waited 28 days after a referendum petition was filed with the board of elections before filing their written protest, although they knew the basis of most of their objections even before the petition was filed, and by the time they filed their prohibition action, the date to print and make absentee ballots ready for use by electors had already passed); *State ex rel. Newell v. Tuscarawas Cty. Bd. of Elections* (2001), 93 Ohio St.3d 592, 757 N.E.2d 1135 (relator waited 20 days after a petition was filed to protest the petition and another 14 days after the protest was denied to file an action for extraordinary relief, which was after the absentee-ballot deadline); *State ex rel. Fuller v. Medina Cty. Bd. of Elections,* 97 Ohio St.3d 221, 2002-Ohio-5922, 778 N.E.2d 37 (relators waited two months from the date the petition was submitted to the board of township trustees to file protest and an additional 17 days after denial of protest to seek a writ of prohibition, after the deadline to have absentee ballots printed and ready for use); *Ascani,* 83 Ohio St.3d 490, 700 N.E.2d 1234 (relator delayed ten weeks after petition was filed to submit a protest, which led to the expiration of the time for certification of the ballot before the action for extraordinary relief was filed).

{¶ 21} Therefore, laches bars relators' prohibition action. This determination renders moot their prohibition claim, which includes a constitutional challenge to R.C. 5705.261. *Blankenship,* 103 Ohio St.3d 567, 2004-Ohio-5596, 817 N.E.2d 382, ¶ 38; *State ex rel. Essig v. Blackwell,* 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5, ¶ 34, quoting *State ex rel. DeBrosse v. Cool* (1999), 87 Ohio St.3d 1, 7, 716 N.E.2d 1114 (" 'Courts decide constitutional issues only when absolutely necessary' "). Accordingly, we deny the writ.

Writ denied.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., concurs separately.

---

**PFEIFER, J., concurring.**

{¶ 22} I would not rely on laches to decide this case. As I wrote in *State ex rel. Ascani v. Stark Cty. Bd. Of Elections* (1998), 83 Ohio St.3d 490, 495, 700 N.E.2d 1234, "[t]his court should adopt a less rigid standard regarding the application of laches in election cases where the relator is seeking to have an issue removed from the ballot."

{¶ 23} I would find in favor of the respondents on the merits. While from all appearances Mason has a school system that would be the envy of every schoolchild in the state, the constitution and statutes of Ohio do not protect the Mason schools from voters who would make them less enviable.

---

Manley Burke, L.P.A., Timothy M. Burke, and Daniel J. McCarthy, for relators.

Rachel A. Hutzel, Warren County Prosecuting Attorney, and Keith W. Anderson, Assistant Prosecuting Attorney, for respondent Warren County Board of Elections.

Langdon & Shafer, L.L.C., and David R. Langdon; Finney, Stagnaro, Saba & Klusmeier, and Christopher P. Finney, for respondents John Meyer and Citizens for Accountability and Results in Education.