THE STATE EX REL. OWENS *v.* BRUNNER, SECY. OF STATE, ET AL.

[Cite as *State ex rel. Owens v. Brunner*, 125 Ohio St.3d 130, 2010-Ohio-1374.]

*Elections — Mandamus — Writ of mandamus sought to compel the secretary of state to certify relator as a candidate and to instruct the boards of elections to place relator's name on the primary-election ballot — Petition signatures improperly invalidated by board of elections — Writ of mandamus granted.*

(No. 2010-0481 — Submitted March 29, 2010 — Decided March 31, 2010.)

IN MANDAMUS

_____

**Per Curiam.**

{¶ 1} This is an expedited election action for a writ of mandamus to compel the certification of relator as a candidate for the Constitution Party nomination for election to the office of Ohio Attorney General at the May 4, 2010 primary election. Because respondents, Secretary of State of Ohio Jennifer Brunner and the Franklin County Board of Elections, abused their discretion and clearly disregarded applicable law in rejecting relator's candidacy, we grant the requested extraordinary relief in mandamus.

**Facts**

{¶ 2} On February 18, 2010, relator, Robert Owens, filed a declaration of candidacy and candidate petition with respondent secretary of state. Owens seeks to be a candidate for the Constitution Party nomination for Attorney General of Ohio at the May 4, 2010 primary election. When the petition was filed, Owens received a statement from the secretary of state's office stating that he had filed approximately 980 petition signatures.

{¶ 3}   On February 22, 2010, in accordance with R.C. 3513.05, the secretary of state transmitted Owens's part-petitions purporting to contain signatures of certain counties to the pertinent boards of elections for an examination of the signatures on the part-petitions.  The secretary of state also issued Directive 2010-28, which provided instructions to the boards of elections for an examination of the signatures on the part-petitions.  The secretary's instructions included:

{¶ 4}   "Each signature must be individually examined.  If a signature is valid, please place a red check mark at the left margin beside it.  After checking an entire part petition, please write on the right side of the front page of each part petition both the number of valid signers and the initials of the board employee who checked the part petition under the number.

{¶ 5}   "If a signature is not valid, please indicate the problem with it by using the following lettered codes or, if no lettered code applies, an explanatory notation:

{¶ 6}   "* * *

{¶ 7}   "ILL 'Illegible' applies only if both the signature and address are unreadable, so that it is impossible to check the signature against a voter registration record.

{¶ 8}   "* * *

{¶ 9}   "NG 'Not Genuine.'  The signature on the petition does not appear to be the genuine signature of the person whose signature it purports to be, compared to the signature on file with the board of elections as of the date the board checks the petition.

{¶ 10} "NR 'Not Registered.'  The signer is not registered to vote.  Each person who signs a part petition must be a qualified elector as of the date the petition was filed with the Secretary of State's office."  (Emphasis omitted.)

{¶ 11} Nineteen of the part-petitions were transmitted to respondent Franklin County Board of Elections, which examined the 547 signatures contained in the part-petitions. The board determined that 162 of the submitted signatures were valid and that the remaining 385 signatures were invalid. Pursuant to R.C. 3513.05, the board returned the petition papers to the secretary of state with its certification of its determination of the validity of the signatures.

{¶ 12} On March 5, 2010, the secretary of state issued Directive 2010-42 to the county boards of elections. The directive contained the form of the primary-election ballots for the major and minor political parties, including the Constitution Party, but Owens's name did not appear on the form as a candidate for the primary election. By letter dated the same day that the directive was issued, the secretary of state notified Owens that she was not certifying his candidacy because of a lack of sufficient valid signatures on his petition. The secretary determined that Owens had submitted 481 signatures, which was 19 signatures less than the 500 valid signatures required for his name to be placed on the primary-election ballot.

{¶ 13} On that same day, Owens requested and received copies of the part-petitions he had filed and those filed by Eric Deaton, a candidate for the Constitution Party nomination for the United States Senate, which the board had previously examined. On March 6, 2010, Owens attended a special meeting of the Franklin County Board of Elections and requested that the board conduct a second review of his part-petitions because "signatures were improperly invalidated as being illegible." On March 9, Owens contacted the board's deputy director by e-mail to follow up on his request. In his e-mail, Owens claimed that there were "FAR more than 19 signatures from Franklin County alone that were invalidated improperly." The deputy director suggested that Owens contact the secretary of state's office and informed him that if the secretary asked the board to review the part-petitions a second time, the board would do so. The secretary's

office then advised the deputy director that if the board determined that it had made an error in its certification of the number of valid signatures on the candidate's petition, the board could amend the certification. The board of elections, however, refused to recheck Owens's part-petitions.

{¶ 14} On March 15, Owens filed this expedited election action for a writ of mandamus to compel the secretary of state to certify his candidacy for the Constitution Party nomination for the office of Ohio Attorney General and to instruct the boards of elections to place his name on the May 4, 2010 primary-election ballot or, in the alternative, to compel the Franklin County Board of Elections and other elections boards to recheck his part-petitions in conformity with Secretary of State Directive 2010-28 and to certify his candidacy. Respondents filed answers, and the parties submitted evidence and briefs pursuant to S.Ct.Prac.R. 10.9. Insofar as Owens attempts to submit evidence with his reply brief, we will not consider it because it was not submitted in accordance with S.Ct.Prac.R. 10.9.

{¶ 15} This cause is now before the court for our determination of the merits.

### Legal Analysis

*Laches*

{¶ 16} Respondents both claim that Owens's mandamus claim is barred by laches. Relators in election cases are required to act with the utmost diligence. *State ex rel. Chillicothe v. Ross Cty. Bd. of Elections*, 123 Ohio St.3d 439, 2009-Ohio-5523, 917 N.E.2d 263, ¶ 9. "If relators in election cases do not exercise the utmost diligence, laches may bar an action for extraordinary relief." *State ex rel. Craig v. Scioto Cty. Bd. of Elections*, 117 Ohio St.3d 158, 2008-Ohio-706, 882 N.E.2d 435, ¶ 11. "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other

party." *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 143, 145, 656 N.E.2d 1277.

{¶ 17} Owens had notice of the secretary's March 5 decision on that same day because, as he admits, on that day, he requested work logs and copies of the part-petitions that he had filed and those filed by Senate candidate Deaton. There would have been no reason for Owens to request these records if he had been certified to the primary-election ballot. Owens thus delayed ten days from that date to file this expedited-election case challenging the secretary's decision not to place his name on the primary ballot.

{¶ 18} Respondents are correct that "we have held that a delay as brief as *nine days* can preclude our consideration of the merits of an expedited election case." (Emphasis sic.) *State ex rel. Landis v. Morrow Cty. Bd. of Elections* (2000), 88 Ohio St.3d 187, 189, 724 N.E.2d 775. But here, at least some of Owens's delay in filing this action was reasonable. Part of the ten-day delay resulted from Owens's diligent efforts to obtain records related to the board's review of his part-petitions and to request the board to review them again. Cf. *Craig*, 117 Ohio St.3d 158, 2008-Ohio-706, 882 N.E.2d 435, ¶ 16 (court rejected laches as a bar to expedited-election case when "[m]uch of the nine-day period [to file the case] after the board's denial of the protest here resulted from [relator's] diligent efforts to secure legal counsel to review the merits of a possible legal challenge to the decision"). In fact, the secretary's office indicated in a March 11 e-mail to a board-of-elections official that the board was authorized to act upon Owens's request to again review his part-petitions to determine whether to amend its prior certification and that "amending is a means of avoiding costly litigation."

{¶ 19} Moreover, "we generally require a showing of prejudice before we apply laches to bar a consideration of the merits of an election case." *State ex rel. Brinda v. Lorain Cty. Bd. of Elections*, 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, ¶ 11. "Normally, this prejudice in expedited election cases occurs

because relators' delay prejudices respondents by making the case an expedited election case under S.Ct.Prac.R. [10.9], which restricts respondents' time to prepare and defend against relators' claims, or impairs boards of elections' ability to prepare, print, and distribute appropriate ballots because of the expiration of the time for providing absentee ballots." *State ex rel. Willke v. Taft*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, ¶ 18.

**{¶ 20}** Owens's delay in filing this case did not cause it to become an expedited election case under S.Ct.Prac.R. 10.9, which provides an accelerated schedule for the submission of a response, evidence, and briefs when an original action relating to a pending action is filed within 90 days before the election. This case would still have been an expedited election case governed by S.Ct.Prac.R. 10.9 even if Owens had filed this case on the same March 5 date that the secretary issued the directive specifying the form for the primary-election ballots, which did not include Owens's name. Therefore, respondents' ability to prepare and defend against Owens's mandamus claim has not been impacted by the delay. See *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 28.

**{¶ 21}** Although the absentee-ballot deadline will have passed by the time our decision in this case is announced, that date would likely have passed even if Owens had filed this case within a week of the date the secretary issued her decision that his name would not be on the primary-election ballot. See *Brinda*, 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, ¶ 13. "This is thus a case in which the statutory time limits would have expired even 'under the best of circumstances.' " *State ex rel. Choices for South-Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 28, quoting *State ex rel. Squire v. Taft* (1994), 69 Ohio St.3d 365, 369, 632 N.E.2d 883.

**{¶ 22}** Finally, there is no evidence that Owens's delay in filing this case was intentionally engineered to obtain a strategic advantage. Cf. *State ex rel. The*

*Ryant Commt. v. Lorain Cty. Bd. of Elections* (1999), 86 Ohio St.3d 107, 113, 712 N.E.2d 696 (expedited election claim barred by laches because of relators' delay and acts of gamesmanship).

{¶ 23} Therefore, laches does not bar our consideration of the merits of this expedited election case, and a consideration of the merits of Owens's mandamus claim is warranted. This is consistent with "the fundamental tenet of judicial review in Ohio," which "is that courts should decide cases on their merits." *State ex rel. Becker v. Eastlake* (2001), 93 Ohio St.3d 502, 505, 756 N.E.2d 1228.

*Mandamus*

{¶ 24} Owens primarily requests a writ of mandamus to compel the secretary of state to certify him as a candidate for the Constitution Party's nomination for election to the office of Ohio Attorney General and to instruct the county boards of election to place his name on the May 4, 2010 Constitution Party primary-election ballot.

{¶ 25} To be entitled to the requested extraordinary relief, Owens must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the secretary of state to provide it, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462, ¶ 13. Because of the proximity of the May 4 primary election, Owens has established that he lacks an adequate remedy in the ordinary course of the law. *State ex rel. Greene v. Montgomery Cty. Bd. of Elections*, 121 Ohio St.3d 631, 2009-Ohio-1716, 907 N.E.2d 300, ¶ 10.

{¶ 26} For the remaining requirements, " '[i]n extraordinary actions challenging the decisions of the Secretary of State and boards of elections, the standard is whether they engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions.' " *State ex rel. Husted v.*

*Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 9, quoting *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11.

{¶ 27} The secretary of state contends that under R.C. 3513.05, the secretary is not subject to mandamus for an alleged error committed by a board of elections in determining the validity of part-petition signatures sent to the board by the secretary. While the secretary is correct that R.C. 3513.05 vests authority in the boards of elections to determine the validity of signatures contained on part-petitions of persons seeking to be candidates at a primary election, it is ultimately the secretary of state who must, for statewide candidates, "certify to each board in the state the forms of the official ballot to be used at the primary election, together with the names of the candidates to be printed on the ballots whose nomination or election is to be determined by electors throughout the entire state and who filed valid declarations of candidacy and petitions." R.C. 3513.05.

{¶ 28} An aggrieved prospective candidate like Owens, who is challenging the ultimate decision not to submit his name as a candidate on the primary-election ballot, properly names the secretary of state as a respondent even if he is challenging an election board's verification decision, because the secretary is the official who relies on the board's determination and is ultimately responsible to place the names of all legally viable candidates on the primary-election ballots. A contrary holding would lead to the absurd result that a person who is legally entitled to be a candidate because the person submitted sufficient valid signatures to be placed on the primary-election ballot would be unable to compel the official responsible for placing the names of primary-election candidates on the ballot – the secretary of state – to do so. We will not construe R.C. 3513.05 in this absurd manner to disenfranchise voters by limiting their choice of candidates that election law dictates under these circumstances. We do agree, however, that insofar as Owens requested in the alternative in his complaint

that the Franklin County Board of Elections and other boards of elections recheck the part-petitions in conformity with Secretary of State Directive 2010-28, no statute or other law imposes this duty on the boards, and Owens is consequently not entitled to that relief.

{¶ 29} Therefore, to be entitled to the primary requested extraordinary relief, Owens must establish that the secretary of state abused her discretion and clearly disregarded applicable law by failing to certify his name as a candidate on the May 4 primary-election ballot. The secretary relied on the certification by the boards of elections of the number of valid signatures to conclude that Owens's petition contained 481 valid signatures, which is 19 signatures short of the 500 valid signatures needed for the placement of his name on the primary-election ballot. See R.C. 3513.05 (For primary elections, "[i]f the declaration of candidacy declares a candidacy which is to be submitted to electors throughout the entire state, the petition * * * shall be signed by at least one thousand qualified electors * * * and the declaration of candidacy and petition shall be filed with the secretary of state * * *. If the declaration of candidacy declares a candidacy for party nomination or for election as a candidate of an intermediate or minor party, the minimum number of signatures on such petition is one-half the minimum number provided in this section").

{¶ 30} In this mandamus action, Owens challenges the Franklin County Board of Elections' rejection of 41 signatures. Of these 41 signatures, 22 were rejected as illegible, 17 were rejected because the persons were not registered, one was rejected as not genuine, and one was rejected as a printed signature. If Owens is able to establish that at least 19 of these signatures were improperly rejected, he would be entitled to the writ to compel the secretary of state to place his name on the primary-election ballot.

{¶ 31} Owens argues that because the board of elections found the "exact same" signatures to be valid for Deaton's part-petitions, the Constitution Party

candidate for United States Senate, he has established his entitlement to the writ. Not so. The signatures and accompanying written addresses on Owens's part-petitions are not exactly the same as the signatures and addresses on Deaton's part-petitions. And even if the signatures and addresses were identical, the board could have erred by validating the signatures on Deaton's part-petitions instead of by invalidating the signatures on Owens's part-petitions.

{¶ 32} Nevertheless, Owens also argues that for his part-petitions, "signatures found to be illegible were in fact legible," and "voters found not to be registered were in fact registered as evidenced by their certified voter registration records attached to the evidence filed in this case." Owens has submitted evidence that includes the part-petitions containing the specified signatures and the board's certified voter-registration records to support his claims.

{¶ 33} The parties agree that the board of elections, in assessing the validity of the signatures on Owens's part-petitions, should have followed the secretary's instructions as incorporated in Secretary of State Directive 2010-28. See R.C. 3501.11(P) (requiring boards of elections to "[p]erform other duties as prescribed by law or the rules, directives, or advisories of the secretary of state"); see also *Colvin*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 57 (court will defer to secretary of state's reasonable interpretation of election law). None of the parties contests the legal propriety of these instructions, and in the limited context of the case before us, we will not decide an issue that has not been raised by the parties.

{¶ 34} For illegible signatures, the secretary of state instructed the boards of election that a "signature is illegible only if *both* the signature and address are unreadable, such that it is impossible for board personnel to check the signature against a voter registration record." (Emphasis sic.) Our review of the evidence establishes that at least 8 of the 22 signatures rejected for illegibility were

sufficiently legible even if the signatures were not readable, because the addresses were readable and the signatures matched the board's records.

{¶ 35} Furthermore, our review of the evidence submitted shows that at least 11 of the 17 signatures rejected as being from unregistered voters were improperly rejected, because the board's records show that the persons are registered to vote and that their petition signatures match their signatures on file.

{¶ 36} Although the board of elections submitted evidence that its manager of elections operations reviewed the pertinent signatures on March 23, 2010, and determined that at most "only four" of the signatures "could arguably be found to be valid," the court's review of the actual part-petitions and certified registration records contradicts this statement and establishes otherwise.

{¶ 37} Owens has established that the board of elections erred in rejecting at least the 19 signatures that he needed to meet the 500-signature requirement of R.C. 3513.05 to have his name placed on the May 4 primary-election ballot. We appreciate the difficulties that elections officials have in reviewing a high volume of signatures and part-petitions in the often abbreviated time period required by the election laws, and we accord due deference to these officials' determinations when they are reasonably supported. But when a prospective candidate establishes that the board erred in rejecting valid signatures and those signatures justify the candidate's placement on the ballot, we must grant a writ ordering the secretary to place the candidate's name on the ballot. Accordingly, the board abused its discretion and clearly disregarded applicable law in failing to certify the validity of the signatures. The secretary of state has a clear legal duty to place Owens's name on the primary-election ballot.

## Conclusion

{¶ 38} Based on the foregoing, Owens has established his entitlement to the requested extraordinary relief. We grant a writ of mandamus to compel the secretary of state to certify Owens's name as a candidate for the Constitution

Party nomination for the office of Ohio Attorney General and to instruct the boards of election to place Owens's name on the May 4, 2010 primary-election ballot.[1]

**{¶ 39}** We observe that in the case before us, Owens seeks to have his petitions certified in connection with his candidacy for Ohio Attorney General in the May 4, 2010 Constitution Party primary election. This case demonstrates that the election timeline promulgated by the General Assembly does not allow sufficient time for review and certification of nominating petitions by election officials or for consideration of legal challenges by this court. We note that this is a matter of importance for the General Assembly to address.

Writ granted.

MOYER, C.J., and PFEIFER, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

LUNDBERG STRATTON, J., dissents.

_____

**LUNDBERG STRATTON, J., dissenting.**

**{¶ 40}** I respectfully dissent from the majority's decision to grant the writ of mandamus. I believe that it is too late for us to issue a mandamus in this case. This court should hold that the beginning of the voting process terminates our ability to rule further on election challenges.

**{¶ 41}** Although the issues were briefed before balloting started, we have not had sufficient time to review the issues. Indeed, most of the ballots were probably printed by the time the briefs were filed in this case. "A State indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. San Francisco Cty. Democratic Cent. Commt.* (1989), 489 U.S. 214, 231, 109 S.Ct. 1013, 103 L.Ed.2d 271. Moreover, "[c]onfidence in the

---

1. We deny Owens's request for attorney fees.

integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez* (2006), 549 U.S.1, 4, 127 S.Ct. 5, 166 L.Ed.2d 1.

{¶ 42} "Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." Id. at 4-5. Clearly then, when an election has already started, a decision such as the majority's will unmistakably cause confusion and disillusionment. See also *Westermann v. Nelson* (1972), 409 U.S. 1236, 1236-1237, 93 S.Ct. 252, 34 L.Ed.2d 207 (W.O. Douglas, Circuit Justice), denying an injunction to add a candidate's name to the Arizona ballot:

{¶ 43} "The complaint may have merit. But the time element is now short and the ponderous Arizona election machinery is already under way, printing the ballots. Absentee ballots have indeed already been sent out and some have been returned. The costs of reprinting all the ballots will be substantial and it may well be that no decision on the merits can be reached by the Court of Appeals in time to reprint the ballots excluding petitioners, should they lose on the merits.

{¶ 44} "* * *

{¶ 45} "On the basis of [the] papers [submitted by the parties] I have concluded that in fairness to the parties I must deny the injunction, not because the cause lacks merit but because orderly election processes would likely be disrupted by so late an action."

{¶ 46} Absentee ballots have now been mailed, and voting has commenced. While I believe this ballot involves only one unopposed candidate and may not disrupt the process too much in the number of ballots requested, a ballot in a contested race that would need to be changed after being mailed (and possibly already marked and returned) could wreak serious havoc on our system

of orderly elections. This case will now be precedent should such a scenario arise.

{¶ 47} I strongly urge the General Assembly to examine this issue and impose deadlines or restrictions on future ballot challenges. To allow challenges to continue after ballots have already been printed and mailed is a costly and disruptive result that must be fixed. The majority believes that the current law requires today's result despite the consequences. I dissent and would hold that the beginning of the voting process terminates this court's jurisdiction to alter the orderly voting process.

_____

Robert M. Owens, pro se.

Richard Cordray, Attorney General, and Aaron D. Epstein, Richard N. Coglianese, Damian W. Sikora, and Michael J. Schuler, Assistant Attorneys General, for respondent Secretary of State Jennifer Brunner.

Ron O'Brien, Franklin County Prosecuting Attorney, Nick A. Soulas Jr., First Assistant Prosecuting Attorney, and Anthony E. Palmer Jr., Assistant Prosecuting Attorney, for respondent Franklin County Board of Elections.

_____