[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Citizens for Responsible Green Govt. v. Green,* Slip Opinion No. 2018-Ohio-3489.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3489

THE STATE EX REL. CITIZENS FOR RESPONSIBLE GREEN GOVERNMENT *v.*

THE CITY OF GREEN ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Citizens for Responsible Green Govt. v. Green,* Slip Opinion No. 2018-Ohio-3489.]**

*Elections—Mandamus—Laches bars relief requested due to relator's failure to act with diligence in filing complaint 92 days before election—Cause dismissed.*

(No. 2018-1091—Submitted August 24, 2018—Decided August 30, 2018.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this expedited election case, relator, Citizens for Responsible Green Government ("the committee"), seeks a writ of mandamus to compel respondents, city of Green, Green Finance Director Steven Schmidt, and the Summit County Board of Elections, to place a referendum on the November 6, 2018 general-

election ballot.  For the reasons set forth below, we dismiss the complaint based on laches and deny the committee's motion for leave to supplement the evidence.

**The evidence in the record**

**{¶ 2}** The present case arises from the efforts of Nexus Gas Transmission, L.L.C. ("Nexus"), to construct an interstate natural-gas pipeline system, which would run through the city.  On August 25, 2017, the Federal Energy Regulatory Commission issued a Certificate of Public Convenience and Necessity to Nexus, authorizing construction of an interstate natural-gas pipeline.  On September 19, 2017, the director of the Ohio Environmental Protection Agency issued a Section 401 Water Quality Certification for the project.  *See* Federal Water Pollution Control Act, 33 U.S.C. 1341.

**{¶ 3}** Nexus sought to obtain easements and rights of way through the city to allow for construction of the pipeline.  But the city opposed the project.  The city appealed the director's decision to the Environmental Review Appeals Commission and separately petitioned the United States Court of Appeals for the Sixth Circuit to review the director's issuance of the certification.  *Green v. Ohio Environmental Protection Agency*, 6th Cir. No. 17-4016.

**{¶ 4}** Meanwhile, on October 2, 2017, Nexus filed in the United States District Court for the Northern District of Ohio a complaint seeking an order of condemnation of permanent and temporary easements across multiple parcels of privately owned land.[1]  *Nexus Gas Transm., L.L.C. v. Green*, N.D.Ohio No. 5:17-

---

[1]  When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, * * * it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

cv-02062-JRA. On December 28, 2017, the court ruled that Nexus had the right to condemn easements through the city and issued a preliminary injunction authorizing Nexus to immediately possess certain properties for the limited purposes of conducting environmental and other surveys. The city appealed the district court's judgment to the Sixth Circuit Court of Appeals.

{¶ 5} The city entered into a settlement agreement with Nexus, effective January 31, 2018, to resolve the litigation. In return for Nexus's payment of $7,500,000, the city agreed, among other things, to grant Nexus easement rights across certain properties.

{¶ 6} On February 5, 2018, the city's mayor introduced Resolution No. 2018-R09, captioned "A Resolution Approving a Settlement of Pending Litigation, Authorizing the Mayor to Enter Into a Settlement Agreement and Related Documents Thereto, And Declaring An Emergency." "Section One" of the resolution approved the settlement agreement, which was attached as an exhibit and incorporated by reference. "Section Four" declared an emergency and provided that the resolution would become effective immediately if approved by three-fourths of the city-council members.

{¶ 7} On February 7, 2018, the resolution passed by a four-to-three vote. Because it failed to garner three-fourths of the votes, however, it did not pass as an emergency matter. *See* Green Codified Ordinances 4.10(A) ("Each emergency resolution and ordinance shall contain a statement of the necessity for such emergency action, and its enactment shall require the affirmative vote of three-fourths (3/4) of the members of Council"). So City Council Clerk Molly Kapeluck crossed out the words "And Declaring an Emergency" from the title, as well as the

---

15 U.S.C. 717f(h).

whole of Section Four, before the appropriate officials signed to indicate passage of the resolution.

{¶ 8} On March 8, 2018, the committee submitted 71 part-petitions to Finance Director Schmidt, calling for a referendum on Resolution No. 2018-R09. Attached to each part-petition was a copy of the resolution *as introduced*, not the certified version containing the clerk's cross-outs. The copy of the resolution appended to the referendum petition also did not include three other components that were part of the certified version: the signatures of the city-council president, the mayor, and the city law director; the roll-call tabulation of the votes of city-council members; and the settlement agreement.

{¶ 9} On April 19, 2018, the Summit County Board of Elections validated 1,284 petition signatures. Of those, however, it called into question the validity of 49 signatures, leaving the final decision on those signatures to city council. The parties do not dispute that even the lower figure of 1,235 signatures would be sufficient for the referendum to qualify for the ballot.

{¶ 10} Once a county board of elections certifies a sufficient number of signatures, the auditor or clerk of the municipality certifies the sufficiency and validity of the petition to the board, for placement of the referendum on the ballot. R.C. 731.29. In Green, the finance director, as the fiscal officer for the city, is the equivalent of the auditor. Green Codified Ordinances 6.3(B).

{¶ 11} On June 11, 2018, Schmidt sent a letter to the director of the board of elections declining to certify the petition because he deemed it "facially invalid and insufficient." Schmidt characterized the petition as misleading because the attached copy of the resolution differed from the certified version of the resolution in the ways described above. He also suggested the possibility that the underlying ordinance was an administrative action and therefore not subject to referendum.

4

**Procedural history**

{¶ 12} The committee commenced this suit for a writ of mandamus on August 6, 2018. The committee requested a writ of mandamus to (1) compel Schmidt to certify the petition to the board of elections for inclusion of the referendum on the next general-election ballot and (2) compel the board to place the referendum on the ballot. We imposed an expedited briefing schedule pursuant to S.Ct.Prac.R. 12.08. 153 Ohio St.3d 1457, 2018-Ohio-3132, 103 N.E.3d 834.

{¶ 13} The committee filed its merit brief on August 10, three days before respondents' answer was due. Because of the committee's early filing, the city and Schmidt (collectively, "the city") moved for additional time to submit briefs and evidence, which we granted. After the city filed its merit brief, the committee filed a reply brief along with a motion for leave to submit three additional exhibits into evidence. The city filed a memorandum in opposition to the motion on August 21.

{¶ 14} We have also received a merit brief from the board of elections as well as an amicus brief in support of respondents from Nexus.

**Legal analysis**

{¶ 15} To prevail in this mandamus case, the committee must establish, by clear and convincing evidence, a clear legal right to the requested relief, a clear legal duty on the part of the city and/or the board of elections to provide that relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Ebersole v. Powell City Council*, 149 Ohio St.3d 501, 2017-Ohio-509, 75 N.E.3d 1245, ¶ 10. Given the proximity of the November election, the committee lacks an adequate remedy in the ordinary course of the law. *State ex rel. Greene v. Montgomery Cty. Bd. of Elections*, 121 Ohio St.3d 631, 2009-Ohio-1716, 907 N.E.2d 300, ¶ 10.

{¶ 16} The city and amicus curiae contend that the committee's complaint is barred by the doctrine of laches. Laches may bar relief in an election-related matter if the party seeking relief has failed to act with the " 'utmost diligence.' "

*State ex rel. Monroe v. Mahoning Cty. Bd. of Elections*, 137 Ohio St.3d 62, 2013-Ohio-4490, 997 N.E.2d 524, ¶ 30, quoting *State ex rel. Fuller v. Medina Cty. Bd. of Elections*, 97 Ohio St.3d 221, 2002-Ohio-5922, 778 N.E.2d 37, ¶ 7. The elements of a laches defense are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party. *State ex rel. Carrier v. Hilliard City Council*, 144 Ohio St.3d 592, 2016-Ohio-155, 45 N.E.3d 1006, ¶ 8.

**{¶ 17}** As noted, Schmidt, Green's finance director, declared the referendum petition "facially invalid and insufficient" on June 11, 2018. The committee filed this mandamus complaint on August 6, 56 days later. The committee denies that there was any unreasonable delay because, it suggests, June 11 is not the date on which the lapse of time should begin to be measured. The committee asserts that it sent a letter to the interim law director on July 30, asking him to file suit against Schmidt pursuant to R.C. 733.59, and that it promptly filed suit six days later, after the interim law director had failed to respond to the letter. But the committee does not explain why it waited seven weeks before sending the demand letter.

**{¶ 18}** Alternatively, the complaint appears to suggest that the committee either was unaware of the June 11 letter until much later or was affirmatively misled into believing that the city might change its position. The complaint alleges that "[a]t no time did the City of Green inform [the committee] that the City was refusing to advance the referendum to the Board of Elections for placement on the ballot." But although it is true that the committee was not copied as a recipient on Schmidt's June 11 letter, there is no evidence, or even an allegation, to suggest that it was *unaware* of the city's decision until some date closer to the filing of the

complaint.[2]  To the contrary, in its reply brief, the committee *admits* that it was aware of the decision "on or about June 13."

{¶ 19} But despite conceding its contemporaneous awareness of the city's decision, the committee contends that its inaction should be excused because it "was also aware that [Interim Law Director William] Chris directed the law firm of Brennan, Manna, and Diamond ["BMD"] to review and update its legal opinion on July 2, 2018.  As demonstrated in [the committee's] Merit Brief, the legal opinion of July 2, 2018 by [BMD] was severely flawed."  None of this information is substantiated by the record.  The record includes a copy of a May 16, 2018 legal opinion that BMD submitted to the city; it is attached to the city's press release announcing the decision not to certify the petition.  But there is no reference to a second legal opinion from BMD in relator's complaint or merit brief, nor, more importantly, is there any evidence that the committee relied on the prospect of a second opinion when it delayed filing suit—much less evidence to establish the reasonableness of that delay.

{¶ 20} To try to remedy the absence of any evidence of a second legal opinion from BMD, the committee on August 20, 2018, filed a motion for leave to an additional, unauthenticated exhibit (proposed Exhibit 11) into evidence.  That exhibit purports to show that on June 28, 17 days after the date of Schmidt's letter, Councilman Matt Shaughnessy sent an e-mail to Interim Law Director Chris containing "an official demand for a legal opinion regarding the assumptions used in the [BMD] legal opinion" regarding the validity of the petition.  Chris responded on July 2, noting that he had shared the request with BMD over the weekend.  Chris

---

[2] The evidence submitted by the city includes two newspaper articles, both dated June 13, providing comments on the rejection of the petition from the committee's attorney, thereby demonstrating the committee's constructive knowledge.  However, a newspaper article containing a purported statement from the agent of an adverse party is hearsay and may not be considered as evidence. *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 30.

also indicated that he had shared the substance of Shaughnessy's e-mail with Roderick Linton Belfance, L.L.P., another law firm hired by the city to provide legal guidance on this matter, and that the Roderick firm continued to agree with the legal opinion provided by BMD. In an e-mail dated July 10, Chris clarified that the Roderick firm did not prepare a supplemental written opinion.

{¶ 21} These e-mails, even if admitted into evidence, would not rebut the city's allegation of unreasonable delay on the part of the committee. Contrary to the representation in the committee's reply brief, there is no evidence that Chris "directed" BMD to "review and update its legal opinion." There is no evidence that the committee was aware of Councilman Shaughnessy's June 28 demand letter at the time. And there is no explanation for why the committee took no action to initiate a lawsuit between June 11 and June 28. The insinuation that the committee was awaiting supplemental, possibly favorable legal guidance has no basis in fact.

{¶ 22} More generally, the committee asserts that its delay was excusable because the exhibits in the case are voluminous and its attorney had to juggle this matter with other cases and priorities. This assertion ignores the fact that a similar argument could likely be made in every election case and, if successful, would swallow the doctrine of laches.

{¶ 23} In our view, the length of time between the city's rejection of the petition and the filing of this suit was unreasonable, the committee was aware of its alleged injury during that time, and it has no reasonable excuse for its delay. We turn, then, to the fourth element of the laches defense, the question of prejudice.

{¶ 24} Generally, "the application of laches requires some sort of prejudice to the other party." *State ex rel. Willke v. Taft*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, ¶ 18.

> Normally, this prejudice in expedited election cases occurs because
> [the] relators' delay prejudices [the] respondents by making the case

8

an expedited election case * * *, which restricts [the] respondents' time to prepare and defend against [the] relators' claims, or impairs boards of elections' ability to prepare, print, and distribute appropriate ballots because of the expiration of the time for providing absentee ballots.

*Id.* By rule, an election matter is automatically expedited if filed within 90 days prior to the relevant election. S.Ct.Prac.R. 12.08(A)(1). Here, the committee filed its complaint on the 92nd day before the election. Because it filed before the date on which complaints are automatically expedited, the committee argues, laches *cannot* apply.

{¶ 25} It is true that when a relator's unreasonable delay in filing a mandamus case causes the matter to become an expedited election matter when filed, that delay is presumed to constitute prejudice for laches purposes. *State ex rel. Duclos v. Hamilton Cty. Bd. of Elections*, 145 Ohio St.3d 254, 2016-Ohio-367, 48 N.E.3d 543, ¶ 11. But the committee cites no authority for the converse proposition: that laches cannot apply so long as the case is ultimately filed before Day 90. To the contrary, laches is an equitable doctrine that may potentially apply to any mandamus claim; it is not a creature of election law. *State ex rel. Carver v. Hull*, 70 Ohio St.3d 570, 577, 639 N.E.2d 1175 (1994) ("The question whether laches has barred a claim in mandamus rests in the court's sound discretion"). The prejudice that exists when unreasonable delay causes an election case to become expedited is merely one possible type of prejudice, not the only kind that may trigger laches.

{¶ 26} The committee's unreasonable delay and decision to file its complaint so close to the 90-day deadline have caused this case to become expedited. The committee's own complaint recognized the need for urgency caused by its delay in filing and expressly *asked* us to order "expedited

consideration of this important elections matter under S.Ct.Prac.R. 12.08." That we would expedite the case was entirely foreseeable; we routinely expedite election matters filed significantly further in advance of the election than was the complaint in this case. *See, e.g.*, *State ex rel. McCann v. Delaware Cty. Bd. of Elections*, 153 Ohio St.3d 1445, 2018-Ohio-2926, 102 N.E.3d 502 (complaint filed 105 days before election); *State ex rel. Guest v. Husted*, 153 Ohio St.3d 1436, 2018-Ohio-2707, 101 N.E.3d 466 (complaint filed 137 days before election).

**{¶ 27}** Today we conclude that prejudice exists for purposes of a laches analysis in election cases not only when the case is automatically expedited because the relator files the complaint after the 90-day cut-off, but also when the relator files the complaint so close in time to that deadline that expediting the proceedings becomes a practical necessity. Although a laches defense "rarely prevails in election cases," *Duclos* at ¶ 8, we conclude that laches bars the relief requested in this case due to the committee's failure to exercise any diligence whatsoever. We therefore dismiss the complaint and decline to address the merits of the issues presented therein.

**{¶ 28}** We also deny the committee's motion for leave to supplement the evidence. As discussed above, proposed Exhibit 11 would not alleviate the laches problem. The other two proffered exhibits (Exhibits 12 and 13) purport to be hyperlinks to YouTube videos of statements made by Mayor Gerard Neugebauer and former Law Director Diane Calta, respectively. These exhibits have been proffered to address whether the underlying ordinance is legislative or administrative, a legal question we need not reach.

Motion denied
and cause dismissed.

O'CONNOR, C.J., and FRENCH and FISCHER, JJ., concur.

O'DONNELL, DEWINE, and DEGENARO, JJ., concur in judgment only.

KENNEDY, J., dissents, with an opinion.

_____

**KENNEDY, J., dissenting.**

{¶ 29} Because we have never decided an election case based solely on a holding that having to defend the action on an expedited basis is per se prejudicial, and because there is no equity in denying the preeminent constitutional right of referendum when the respondent has not shown actual, material prejudice from any delay, I dissent.

{¶ 30} "Expedited-election cases 'implicate the rights of electors underlying the statutory time limits of R.C. 3505.01 and 3509.01.' " *Blankenship v. Blackwell*, 103 Ohio St.3d 567, 2004-Ohio-5596, 817 N.E.2d 382, ¶ 26, quoting *State ex rel. Ascani v. Stark Cty. Bd. of Elections*, 83 Ohio St.3d 490, 494, 700 N.E.2d 1234 (1998). We have therefore promulgated S.Ct.Prac.R. 12.08 to require the expedited briefing of election cases that are filed within 90 days of the election in order to allow us to resolve these cases promptly and ensure that the statutory time limits for preparing and mailing ballots are respected. *See State ex rel. SuperAmerica Group v. Licking Cty. Bd. of Elections*, 80 Ohio St.3d 182, 187, 685 N.E.2d 507 (1997).

{¶ 31} For this reason, we have recognized that "cases in which laches is dispositive generally involve prejudice to the respondents in their statutory obligation to absentee voters to have absentee ballots printed and ready for use." *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 14. Tellingly, the lead opinion points to no decision from this court holding that prejudice is "presumed"—apparently, irrebuttably—solely from the fact that the action proceeded as an expedited election case. Any such presumption conflicts with established caselaw that it is the respondent who has the burden to demonstrate material prejudice.

{¶ 32} Importantly, when we have found a delay in bringing an election case to be prejudicial, the statutory deadline for having absentee ballots printed and

ready for use had expired before the action could be decided. *E.g.*, *State ex rel. Duclos v. Hamilton Cty. Bd. of Elections*, 145 Ohio St.3d 254, 2016-Ohio-367, 48 N.E.3d 543, ¶ 12; *State ex rel. Chillicothe v. Ross Cty. Bd. of Elections*, 123 Ohio St.3d 439, 2009-Ohio-5523, 917 N.E.2d 263, ¶ 17; *Mason City School Dist. v. Warren Cty. Bd. of Elections*, 107 Ohio St.3d 373, 2005-Ohio-5363, 840 N.E.2d 147, ¶ 19; *Blankenship* at ¶ 26; *see also State ex rel. Brinda v. Lorain Cty. Bd. of Elections*, 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, ¶ 13; *State ex rel. Commt. for Charter Amendment, City Trash Collection v. Westlake*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 18-19.

{¶ 33} In contrast, this case has been fully briefed well in advance of the deadline for preparing absentee ballots as required by the Uniformed and Overseas Citizens Absentee Voters Act, 42 U.S.C. 1973ff. Pursuant to R.C. 3511.04(B), that deadline is 45 days before the general election, or September 22, 2018. Accordingly, because there is still time to decide this case on the merits without impeding respondent Summit County Board of Elections in its duty to prepare and mail absentee ballots, the purpose of S.Ct.Prac.R. 12.08 "to give the Supreme Court adequate time for full consideration of the case" has been satisfied, notwithstanding any delay in the filing of the action.

{¶ 34} It is true that we have sometimes indicated that the element of prejudice is satisfied when the delay causes the case to become an expedited election case pursuant to S.Ct.Prac.R. 12.08, which restricts the time the respondent has to prepare and defend the case. *E.g.*, *Duclos* at ¶ 11; *State ex rel. Coughlin v. Summit Cty. Bd. of Elections*, 136 Ohio St.3d 371, 2013-Ohio-3867, 995 N.E.2d 1194, ¶ 11; *Chillicothe* at ¶ 17; *State ex rel. Owens v. Brunner*, 125 Ohio St.3d 130, 2010-Ohio-1374, 926 N.E.2d 617, ¶ 19; *State ex rel. Willke v. Taft*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, ¶ 18. But despite that language, in none of those cases did we conclude that laches barred relief based solely on a presumption that the procedural burdens imposed by expedited briefing were prejudicial. These

are either cases in which the deadline for preparing ballots had also passed—such as *Duclos*, on which the lead opinion relies as purportedly recognizing a presumption of prejudice—or cases in which the court held that the laches defense did not apply. For example, the lead opinion relies on *Willke* for the proposition that having to defend an expedited election case is prejudicial, yet there we declined to apply laches, noting that the respondents had "assert[ed] no specific prejudice in their laches argument," *Willke* at ¶ 19. That case would have proceeded as an expedited election case in the best of circumstances.

{¶ 35} We have also indicated that " 'for election cases, laches is not an affirmative defense, and [persons seeking relief] have the burden of proving that they acted with the requisite diligence.' " (Brackets sic.) *Smith v. Scioto Cty. Bd. of Elections*, 123 Ohio St.3d 467, 2009-Ohio-5866, 918 N.E.2d 131, ¶ 14, quoting *State ex rel. Vickers v. Summit Cty. Council*, 97 Ohio St.3d 204, 2002-Ohio-5583, 777 N.E.2d 830, ¶ 13. But the duty of "relators in election cases to act with the utmost diligence," *Blankenship*, 103 Ohio St.3d 567, 2004-Ohio-5596, 817 N.E.2d 382, at ¶ 19, is separate from the respondent's burden to demonstrate that it has been prejudiced by the relator's lack of diligence. " '[W]e generally require a showing of prejudice before we apply laches to bar a consideration of the merits of an election case.' " *Owens* at ¶ 19, quoting *Brinda*, 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, at ¶ 11. The only party who can show prejudice is the respondent—"a party asserting a laches defense must demonstrate that it has been prejudiced by the other party's delay." *State ex rel. Davis v. Summit Cty. Bd. of Elections*, 137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, ¶ 10. And the prejudice must be *material* before laches will bar relief. *State ex rel. Rife v. Franklin Cty. Bd. of Elections*, 70 Ohio St.3d 632, 635, 640 N.E.2d 522 (1994); *see also Smith v. Smith*, 168 Ohio St. 447, 455, 156 N.E.2d 113 (1959) ("in order to successfully prosecute a claim of laches, the person asserting the claim must show that he has been materially prejudiced by the delay of the adverse party in asserting

his rights"); *State ex rel. Mallory v. Pub. Emp. Retirement Bd.*, 82 Ohio St.3d 235, 244-245, 694 N.E.2d 1356 (1998) (laches is not a bar to a mandamus action when no evidence of material prejudice is presented).

{¶ 36} Until today, we had never decided an election case based solely on the conclusion that having to defend the action on an expedited basis is per se prejudicial. Rather, the fact that a case has proceeded on an expedited timeline does not, by itself, establish prejudice, and the respondent is required to show that the briefing schedule materially hindered its ability to prepare and defend against the action in some specific, concrete way. This is a reason why a laches defense "rarely prevails in election cases," *Duclos*, 145 Ohio St.3d 254, 2016-Ohio-367, 48 N.E.3d 543, at ¶ 8.

{¶ 37} This is not to say that the difficulties faced by the respondent in an expedited election case can never be prejudicial, but here, respondents city of Green and its finance director, Steven Schmidt, have failed to make that showing. The only specific claim of prejudice is their assertion that relator, Citizens for Responsible Green Government, "prematurely filed its merit brief on Friday August 10, 2018 in an attempt to minimize the Respondents' time to gather evidence and prepare a merit brief—gamesmanship that was self-evidently done to gain a strategic advantage." They explain that "[t]his tactic effectively reduced the City's already short response time to one business day." However, we granted the city and Schmidt's request for an extension of time, allowing them four additional business days to file these materials and alleviating any potential prejudice. Now, having obtained that relief, they seek a duplicative remedy in laches, without providing any concrete details as to how their preparation and defense of the case has been materially affected. Importantly, this case presents relatively straightforward issues regarding whether relator's petition is sufficient and valid. None of these issues have required extensive discovery to defend, and there is no indication that the city and Schmidt were prevented from thoroughly presenting the

evidence, authority, and argument supporting their position in the time frame of an expedited election action.

{¶ 38} Beyond relieving the lead opinion of the need to weigh the equities of each individual assertion of prejudice, the unintended consequences of the lead opinion are not immediately apparent. The lead opinion concludes that having to defend an expedited election action by itself prejudices the respondent, and then it applies that conclusion to a case that was not automatically classified as an expedited election action by rule because it was filed on the 92nd day before the election. That may seem close enough for the lead opinion, but there is no express limit to when this court can expedite an election case, and we have frequently expedited election matters filed further in advance of the election than this case. *See, e.g.*, *State ex rel. McCann v. Delaware Cty. Bd. of Elections*, 153 Ohio St.3d 1445, 2018-Ohio-2926, 102 N.E.3d 502 (complaint filed on Day 105); *State ex rel. Guest v. Husted*, 153 Ohio St.3d 1436, 2018-Ohio-2707, 101 N.E.3d 466 (Day 137). The lead opinion's conclusion presuming prejudice in cases filed "so close in time to [the 90-day] deadline that expediting the proceedings becomes a practical necessity," lead opinion at ¶ 27, therefore has no limiting principle at all. And even though laches is an equitable defense and necessarily fact-based, the lead opinion's new per se prejudice rule would apply to all future expedited election cases, without regard for the equities and circumstances involved in each one.

{¶ 39} We ought not bar review of election cases on the merits based on a judge-made presumption when the legislature, the final arbiter of public policy, has not established a specific limitations period for filing them. Accordingly, "consistent with the 'fundamental tenet of judicial review in Ohio'—'that courts should decide cases on their merits,' " *State ex rel. Voters First v. Ohio Ballot Bd.*, 133 Ohio St.3d 257, 2012-Ohio-4149, 978 N.E.2d 119, ¶ 21, quoting *State ex rel. Becker v. Eastlake*, 93 Ohio St.3d 502, 505, 756 N.E.2d 1228 (2001), I would reject

respondents' laches defense and consider on the merits whether Schmidt abused his discretion in determining that the referendum petition was insufficient and invalid.

_____

David A. Mucklow, for relator.

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Peter W. Nischt, Assistant Prosecuting Attorney, for respondent Summit County Board of Elections.

Roderick Linton Belfance, L.L.P., William G. Chris, Lawrence R. Bach, and Todd A. Mazzolla, for respondents City of Green and Finance Director Steven Schmidt.

Bricker & Eckler, L.L.P., James J. Hughes III, Frank L. Merrill, and Maria J. Armstrong, urging denial of the writ for amicus curiae, Nexus Gas Transmission, L.L.C.

_____